Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

CHRISTINA BROOKS, on behalf of all )
Beneficiaries, pursuant to Section 537.080, )
)
     Plaintiff, )
)
vs. )
)
THE CITY OF ST. LOUIS, )
)
Serve: )
c/o Mayor Francis Slay )
St. Louis City Hall )
1200 Market St )
St. Louis, MO 63103 )
)
ST. LOUIS CITY JUSTICE CENTER, )    Cause Number:
)
Serve: )
c/o Commissioner of Corrections )    Division Number:
St Louis Corrections Division )
7600 Hall St )
St. Louis, MO 63147 )
)
DALE GLASS, )    **JURY TRIAL REQUEST**
)
Serve: )
3300 Shenandoah Ave, Apt. B )
Saint Louis, MO 63104-1720 )
)
JOSHUA HILL, )
)
Serve: )
7744 Keswick Pl )
Saint Louis, MO 63119-5427 )
)
CARL MYERS, )
)
Serve: )
6213 Peurifoy Ave )
Saint Louis, MO 63134-1807 )

**EXHIBIT**

1

LYNN PAGE,                                          )
                                                    )
Serve:                                              )
5315 N Kingshighway Blvd, Apt. B                    )
Saint Louis, MO 63115-1411                          )
                                                    )
JERMANDA ADAMS,                                     )
                                                    )
Serve:                                              )
4843 Lee Ave                                        )
Saint Louis, MO 63115-2111                          )
                                                    )
THE CITY OF JENNINGS,                               )
Serve:                                              )
Mayor Pro Tempore Francine Dugger                   )
Jennings City Hall                                  )
2120 Hord Ave                                       )
Jennings, MO 63136                                  )
                                                    )
THE CITY OF JENNINGS DETENTION                      )
CENTER,                                             )
Serve:                                              )
Lt. Gene Neal, Director of Operations               )
Jennings Correctional Facility                      )
5445 Jennings Station Road                          )
Jennings, MO 63136                                  )
                                                    )
EUGENE NEAL,                                        )
                                                    )
Serve:                                              )
6930 Pine Ridge Dr                                  )
Saint Louis, MO 63121-2734                          )
                                                    )
RICK CRIM,                                          )
                                                    )
Serve:                                              )
8854 Murvale Dr                                     )
Saint Louis, MO 63136-3727                          )
                                                    )
DEMETRIUS STAPLES,                                  )
                                                    )
Serve:                                              )
83 Catalpa Dr                                       )
Granite City, IL 62040-6724                         )

2

AYKAN ACIKGOZ,              )
                                     )
Serve:                               )
5 Country Hill Ct              )
Saint Peters, MO 63376-2029  )
                                     )
KELLYE STILL,               )
                                     )
Serve:                               )
2625 Avie Dr                  )
Saint Louis, MO 631361308    )
                                     )
KYLE BASHAW,              )
                                     )
Serve:                               )
2437 W Adams St            )
Saint Charles, MO 63301-1427  )
                                     )
YVETTE HARRIS,            )
                                     )
Serve:                               )
11920 Homestead Ave      )
Saint Louis, MO 63138-2500   )
                                     )
KEVIN STEVENER,           )
                                     )
Serve:                               )
1861 Wellington Woods Dr   )
Eureka, MO 63025-1098       )
                                     )
and                                   )
                                     )
KENT MENNING             )
                                     )
Serve:                               )
1924 Edgemont Dr,          )
Arnold, MO 63010-1914      )
                                     )
      Defendants.             )

## **PETITION**

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

## INTRODUCTION

COMES NOW Plaintiff, Christina Brooks, and brings this civil action against Defendants on behalf of all beneficiaries permitted to pursue claims, pursuant to RSMo 537.080 and 42 U.S.C. § 1983.

Christina Brooks is the natural mother of decedent DeJuan L. Brison ("Brison"). From October 1, 2014 to October 4, 2014, Brison was confined at the St. Louis City Justice Center, and on October 2, 2014, Brison was placed on full suicide watch. Pursuant to an outstanding warrant, on October 4, 2014, Brison was transferred to the City of Jennings Detention Center by a St. Louis County Prisoner Conveyance Officer. The St. Louis City Justice Center never notified Jennings Detention Center before the transfer that Brison was on suicide watch, and that he had demonstrated suicidal tendencies. In addition, St. Louis City Justice Center failed to provide Jennings Detention Center with Brison's medical history.

Soon after his arrival at Jennings Detention Center, Brison began suffering from shortness of breath, which was left untreated despite his requests for medication, and ultimately caused him to collapse. Following Brison's breathing difficulties, corrections officers isolated Brison in an unsupervised and unmonitored jail cell in direct violation of Jennings Detention Center's policies and procedures. Three hours after transfer to the Jennings Detention Center, Brison hung himself with a blanket. Brison was discovered unconscious and hanging from his jail cell door by a corrections officer who was taking out the trash. Brison never regained consciousness. He died seventeen days later in the intensive care unit at Barnes Jewish Hospital. DeJuan Brison was twenty-six years old and the father of four sons.

As will be further detailed herein, the City of St. Louis, the St. Louis City Justice Center, the City of Jennings, the Jennings Detention Center, and the St. Louis County Police

4

Department intentionally deprived DeJuan Brison of basic rights and privileges secured and protected by the United States Constitution by engaging in an ongoing pattern and practice of misconduct.

## JURISDICTION AND VENUE

1.    This action is brought pursuant to §537.080, et seq., RSMo.

2.    This Court has subject-matter jurisdiction over this action, pursuant to 42 U. S.C. §1983, for the deprivation of Plaintiff's constitutional rights as guaranteed by the Fourth, Eighth, and Fourteenth Amendments.

## FACTUAL ALLEGATIONS

3.    Christina Brooks is the natural mother of DeJuan L. Brison, decedent.

4.    Defendant Dale Glass ("Glass") was at all times relevant St. Louis Corrections Commissioner, acting under color of law at all relevant times to this Petition, and in such capacity as an agent, servant, and employee of The City of St. Louis and the St. Louis City Justice Center, he was acting under the direction and control of The City of St. Louis and the St. Louis City Justice Center, and he was acting pursuant to either official policy or custom and practice of The City of St. Louis. He is served in both his individual and official capacity.

5.    Defendant Joshua Hill ("Hill") was at all times relevant a Corrections Officer for The City of St. Louis, acting under color of law at all relevant times to this Petition, and in such capacity as an agent, servant, and employee of The City of St. Louis and the St. Louis City Justice Center, he was acting under the direction and control of The City of St. Louis and the St. Louis City Justice Center, and he was acting pursuant to either official policy or custom and practice of The City of St. Louis. He is served in both his individual and official capacity.

6.    Defendant Carl Myers ("Myers") was at all times relevant a Corrections Officer

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

for The City of St. Louis, acting under color of law at all relevant times to this Petition, and in such capacity as an agent, servant, and employee of The City of St. Louis and the St. Louis City Justice Center, he was acting under the direction and control of The City of St. Louis and the St. Louis City Justice Center, and he was acting pursuant to either official policy or custom and practice of The City of St. Louis. He is served in both his individual and official capacity.

7. Defendant Lynn Page ("Page") was at all times relevant a Corrections Officer for The City of St. Louis, acting under color of law at all relevant times to this Petition, and in such capacity as an agent, servant, and employee of The City of St. Louis and the St. Louis City Justice Center, she was acting under the direction and control of The City of St. Louis and the St. Louis City Justice Center, and she was acting pursuant to either official policy or custom and practice of The City of St. Louis. She is served in both her individual and official capacity.

8. Defendant Jermanda Adams ("Adams") was at all times relevant a Corrections Officer for The City of St. Louis, acting under color of law at all relevant times to this Petition, and in such capacity as an agent, servant, and employee of The City of St. Louis and the St. Louis City Justice Center, she was acting under the direction and control of The City of St. Louis and the St. Louis City Justice Center, and she was acting pursuant to either official policy or custom and practice of The City of St. Louis. She is served in both her individual and official capacity.

9. Defendants Glass, Hill, Myers, Page, and Adams are hereinafter referred to jointly as "SJCCO Defendants."

10. Defendant The City of St. Louis ("COS") is a municipality duly authorized under the laws of the State of Missouri. During the course of conduct described in this Petition, the COS acted through its agents, employees, and servants and was responsible for establishing

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

policy, and performing procedures and guidelines for the conduct of correction officers, jailers, and/or auxiliary personnel employed by and/or working for the COS and the St. Louis City Justice Center ("SJC"). During all relevant times, the SJCCO Defendants acted pursuant to the policies, practices, and customs adopted and ratified by the COS.

11.     Defendant SJC is an authorized detention center under the laws of the State of Missouri. During the course of conduct described in this Petition, the SJC acted through its agents, employees, and servants and was responsible for establishing policy, and performing procedures and guidelines for the conduct of correction officers, jailers, and/or auxiliary personnel employed by and/or working for the COS and the SJC. During all relevant times, the SJCCO Defendants acted pursuant to the policies, practices, and customs adopted and ratified by the COS.

12.     Defendant Eugene Neal ("Neal") was at all times relevant Lieutenant Director of Operations for The City of Jennings Department of Corrections, acting under color of law at all relevant times to this Petition, and in such capacity as an agent, servant, and employee of The City of Jennings ("COJ") and The City of Jennings Detention Center ("JDC"), he was acting under the direction and control of the COJ and the JDC, and he was acting pursuant to either official policy or custom and practice of the COJ. He is served in both his individual and official capacity.

13.     Defendant Rick Crim ("Crim") was at all times relevant a Corrections Officer for the COJ, acting under color of law at all relevant times to this Petition, and in such capacity as an agent, servant, and employee of the COJ and the JDC, he was acting under the direction and control of the COJ and the JDC, and he was acting pursuant to either official policy or custom and practice of the COJ. He is served in both his individual and official capacity.

7

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

14.     Defendant Demetrius Staples ("Staples") was at all times relevant a Corrections Officer for the COJ, acting under color of law at all relevant times to this Petition, and in such capacity as an agent, servant, and employee of the COJ and the JDC, he was acting under the direction and control of the COJ and the JDC, and he was acting pursuant to either official policy or custom and practice of the COJ. He is served in both his individual and official capacity.

15.     Defendant Aykan Acikgoz ("Acikgoz") was at all times relevant a Corrections Officer for the COJ, acting under color of law at all relevant times to this Petition, and in such capacity as an agent, servant, and employee of the COJ and the JDC, he was acting under the direction and control of the COJ and the JDC, and he was acting pursuant to either official policy or custom and practice of the COJ.  He is served in both his individual and official capacity.

16.     Defendant Kellye Still ("Still") was at all times relevant a Corrections Officer for the COJ, acting under color of law at all relevant times to this Petition, and in such capacity as an agent, servant, and employee of the COJ and the JDC, she was acting under the direction and control of the COJ and the JDC, and she was acting pursuant to either official policy or custom and practice of the COJ.  She is served in both her individual and official capacity.

17.     Defendant Kyle Bashaw ("Bashaw") was at all times relevant a Corrections Officer for the COJ, acting under color of law at all relevant times to this Petition, and in such capacity as an agent, servant, and employee of the COJ and the JDC, he was acting under the direction and control of the COJ and the JDC, and he was acting pursuant to either official policy or custom and practice of the COJ. He is served in both his individual and official capacity.

18.     Defendant Yvette Harris ("Harris") was at all times relevant a Corrections Officer for the COJ, acting under color of law at all relevant times to this Petition, and in such capacity as an agent, servant, and employee of the COJ and the JDC, she was acting under the direction

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

and control of the COJ and the JDC, and she was acting pursuant to either official policy or custom and practice of the COJ. She is served in both her individual and official capacity.

19.     Defendant Kevin Stevener ("Stevener") was at all times relevant a Corrections Officer for the COJ, acting under color of law at all relevant times to this Petition, and in such capacity as an agent, servant, and employee of the COJ and the JDC, he was acting under the direction and control of the COJ and the JDC, and he was acting pursuant to either official policy or custom and practice of the COJ. He is served in both his individual and official capacity.

20.     Defendants Neal, Crim, Staples, Acikgoz, Still, Bashaw, Harris, and Stevener are hereinafter referred to jointly as "JDCCO Defendants."

21.     Defendant Kent Menning was at all times relevant a Police Officer for the St. Louis County Police Department, acting under color of law at all relevant times to this Petition, and in such capacity as an agent, servant, and employee of St. Louis County Government, he was acting under the direction and control of the St. Louis County Police Department, and he was acting pursuant to either official policy or custom and practice of the St. Louis County Police Department. He is served in both his individual and official capacity.

22.     Defendant COJ is a municipality duly authorized under the laws of the State of Missouri. It is one of eighty-nine municipalities in St. Louis County. During the course of conduct described in this Petition, the COJ acted through its agents, employees, and servants and was responsible for establishing policy, and performing procedures and guidelines for the conduct of correction officers, jailers, and/or auxiliary personnel employed by and/or working for the COJ and the JDC. During all relevant times, the JDCCO Defendants acted pursuant to the policies, practices, and customs adopted and ratified by the COJ.

23.     Defendant JDC is an authorized detention center under the laws of the

State of Missouri. During the course of conduct described in this Petition, the JDC acted through its agents, employees, and servants and was responsible for establishing policy, and performing procedures and guidelines for the conduct of correction officers, jailers, and/or auxiliary personnel employed by and/or working for the COJ and the JDC. During all relevant times, the JDCCO Defendants acted pursuant to the policies, practices, and customs adopted and ratified by the COJ.

24. Plaintiff sues Defendants in their individual and official capacities.

25. On October 1, 2014 at 11:00 a.m., Brison was arrested related to domestic issues and booked into the SJC at 4:12 p.m.

26. The following day, Brison was placed on full suicide watch and continued on full suicide watch and/or close observation throughout his detention at the SJC.

27. On October 4, 2014 at 8:45 a.m., Brison was released into the custody of St. Louis Prisoner Conveyance Officer Kent Menning ("Menning") for transport to the JDC related to an outstanding warrant in the COJ.

28. Menning was not advised that Brison was on suicide watch during his confinement in the SJC in direct contravention of standard policy, procedure, practice, and custom, thus demonstrating deliberate indifference to Brison's medical needs.

29. Menning failed to request and obtain Brison's medical information prior to transfer in direct contravention of standard policy, procedure, practice, and custom, thus demonstrating deliberate indifference to Brison's medical needs.

30. Brison was booked at JDC on a failure to appear warrant that was issued for

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

Shoplifting, which occurred on August 28, 2012, despite Brison having previously posted a $300.00 bond. Brison's initial bond was forfeited on September 3, 2013, and Jennings issued the new warrant on September 16, 2013 with a new bond set at $500.00.

31. The COJ resolves municipal violations using a method that violates due process and equal protection requirements under the Fourth and Fourteenth Amendments resulting in an unconstitutional practice of pursuing profits for the COJ via the widespread abuse and detention of impoverished residents, including Brison. The COJ's profit-driven penal practice puts an emphasis on generating revenue for the COJ over the administration of justice, which results in frequent, extended, and needless confinement, including that of Brison.

32. The JDC was understaffed during the booking process of Brison.

33. During the booking procedure, JDCCO Defendants failed to

   a. Question the detainees individually according to standard procedure and practice;

   b. Identify serious medical concerns pertaining to Brison, including signs of suicidal ideation;

   c. Identify serious medical concerns pertaining to Brison, including that he was suffering from respiratory distress;

   d. Supply Brison with prescribed medication related to his medical condition; and

   e. Make a medical provider available to evaluate and address detainees' mental and medical concerns, including Brison's.

34. The COJ and JDCCO Defendants showed a deliberate indifference to Brisons physical and mental health while being detained in the JDC.

35. Despite serious physical and mental concerns, and as a direct result of the JDC's

11

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

prioritization of the collection of fees over the health and safety of individuals in their custody, the COJ and the JDC made the deliberate decision to keep Brison incarcerated.

36. At 12:40 p.m., JDCCO Defendants isolated Brison in Cell 4 Block B ("C4BB") while other JDC inmates were housed in Block A, which had four-man cells.

37. When an inmate has a medical condition, JDCCO Defendants' standard procedure is to place said inmate in a four-man cell so that the inmate can be easily observed.

38. JDCCO Defendants knew that C4BB was difficult to observe and monitor.

39. JDCCO Defendants knew that C4BB posed an enhanced threat of suicide, as a previous inmate, Charles Chatman, had hung himself in that very cell.

40. JDCCO Defendants are to provide one blanket to each inmate; Brison had two blankets in his cell.

41. At 12:57 p.m., Brison fastened a blanket around his neck and tied it to the bars of his jail cell door.

42. At 1:21 p.m., JDCCO Defendant Still discovered Brison hanging from his door and left him hanging from his door.

43. JDCCO Defendant Still was unable to radio for assistance for Brison due to improperly functioning equipment.

44. JDC policy, practices, customs, and procedure require JDCCO Defendants to monitor inmates every thirty minutes, and they are required to punch a time card as a record of proper monitoring.

45. There is no record of JDCCO Defendants ever having checked on Brison.

46. At 1:38 p.m., EMS transported Brison to Barnes-Jewish Hospital; Brison was

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

unconscious and in critical condition when he arrived at the hospital and was placed on life support.

47. Brison never regained consciousness, and as a result of the injuries he sustained in the JDC, he died seventeen days later on October 21, 2014.

## COUNT I
### (SJCCO DEFENDANTS & MENNING)

COMES NOW Plaintiff, in Count I of this Petition, and for her claim and cause of action against SJCCO Defendants and Menning, states and alleges as follows:

48. Plaintiff realleges and repleads each and every allegation contained in paragraphs 1 through 47 of this Petition as if fully set out herein.

49. SJCCO Defendants and Menning were on duty on October 4, 2014 and responsible for the care, custody, and control of Brison.

50. SJCCO Defendants and Menning were responsible for providing Brison with appropriate medical care.

51. SJCCO Defendants knew Brison was on full suicide watch during his confinement in the SJC.

52. SJCCO Defendants had a duty to notify Menning about Brison's physical and mental health status; specifically, regarding Brison's suicide watch while he was in the custody of SJC.

53. Menning had a duty to inquire about and gather information related to Brison's medical condition before transporting him to JDC.

54. SJCCO Defendants knew Brison was suffering from serious physical and mental health issues, and SJCCO Defendants knew that they needed to take special precautions in order to prevent his suicide. In complete and deliberate indifference to Brison's serious health

13

issues and in violation of standard practice, custom, and protocol, SJCCO Defendants failed to communicate this information to Menning before Brison was transferred to JDC.

55. Likewise, in complete indifference to Brison's health needs, Menning failed to obtain Brison's medical status prior to transfer in violation of standard practice, custom, and protocol.

56. SJCCO Defendants and Menning demonstrated a deliberate indifference to Brisons medical, mental, and safety needs, causing or contributing to his death.

57. As a direct and proximate cause of SJCCO Defendants' and Menning's actions, Plaintiff sustained loss because of Brison's death in the nature of pecuniary losses, as well as the loss of Brison's companionship, comfort, counsel, support, guidance, and instruction.

58. As a direct and proximate result of one or more of the above referenced negligent acts or omissions, Brison was subjected to extreme pain, suffering, physical and emotional injury, fear, and shock prior to his death.

59. As a direct and proximate cause of SJCCO Defendants' and Menning's negligence, Plaintiff was required to incur expenses for Brison's funeral and burial.

60. The acts of SJCCO Defendants and Menning were intentional, wanton, malicious, oppressive, reckless, and/or callously indifferent to the rights of Brison, thus entitling Plaintiff to an award of punitive damages against SJCCO Defendants and Menning.

61. SJCCO Defendants and Menning were negligent in the following manner:

    a. Failed to protect detainees under their care related to serious medical needs;

    b. Failed to properly document serious medical needs and advise JDC of needs;

    c. Failed to obtain relevant information related to detainee's serious medical needs;

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

    d. Failed to follow proper procedures related to the transfer of detainees with serious

       medical needs; and

    e. Failed to properly supervise detainee with serious medical needs.

62. The aforementioned negligence constitutes deliberate indifference.

WHEREFORE, Plaintiff prays the Court enter judgment in Count I in favor of Plaintiff
and against SJCCO Defendants and Menning, awarding:

    a. Compensatory damages in excess of Two Million Dollars ($2,000,000.00);

    b. Punitive damages against SJCCO Defendants and Menning, in their individual

       capacities, in excess of Five Million Dollars ($5,000,000.00);

    c. Reasonable attorney's fees and costs incurred in this action; and

    d. Such other and further relief as the Court deems just and proper, together with

       costs.

**COUNT II**
**(THE CITY OF ST. LOUIS)**

COMES NOW Plaintiff, in Count II of this Petition, and for her claim and cause of action
against the COS, states and alleges as follows:

63.    Plaintiff realleges and repleads each and every allegation contained in paragraphs
1 through 62 of this Petition as if fully set out herein.

64.    SJCCO Defendants were responsible for providing Brison with appropriate
medical care and protection.

65.    SJCCO Defendants knew that Brison was on full suicide watch while he was
detained in the SJC.

66.    SJCCO Defendants transferred Brison to the custody of JDC.

67.    SJCCO Defendants had a duty to notify the JDC of Brison's status in the SJC

before they transferred him to the JDC.

68.     SJCCO Defendants had a duty to transfer Brison with adequate information and in a manner that did not endanger his life and health.

69.     At all relevant times to this action, Brison did not have the capacity to protect himself.

70.     As a direct and proximate result of SJCCO Defendants' failure to notify the JDC, Brison was caused or provoked into killing himself while in the custody of the JDC.

71.     As a direct and proximate result of the COS's negligent supervision, training, hiring, staffing, and actions through its agents, SJCCO Defendants, as more fully hereinafter set out, Brison was caused great physical, emotional, and psychological injuries that directly and proximately resulted from the reckless and negligence of the COS in the following manner:

  a. Failure to undergo and/or provide training related to proper protection and care of detainees under its care for transfer to other jurisdictions;

  b. Failure to protect detainees under its care and control from death related to suicide;

  c. Failure to provide training related to identifying recognizable serious medical needs and the proper procedures related to such needs and the sharing of that information with other jurisdictions;

  d. Failure to identify serious medical needs and the proper procedures related to such needs; and

  e. Failure to properly staff transfer of detainees in order to ensure proper protocol and procedures are followed.

72.     The COS's aforementioned negligence constitutes a deliberate indifference to

serious medical and safety needs.

73. As a direct and proximate cause of the COS's negligence, Plaintiff sustained loss because of Brison's death in the nature of pecuniary losses as well as the loss of Brison's companionship, comfort, counsel, support, guidance, and instruction.

74. As a direct and proximate result of one or more of the above referenced negligent acts or omissions, Brison was subjected to extreme pain, suffering, physical and emotional injury, fear, and shock prior to his death.

75. As a direct and proximate cause of Defendant's negligence, Plaintiff was required to incur expenses for the decedent's funeral and burial.

76. The acts of Defendant were intentional, wanton, malicious, oppressive, reckless, and/or callously indifferent to the rights of Brison, thus entitling Plaintiff to an award of punitive damages against Defendant.

WHEREFORE, Plaintiff prays the Court enter judgment in Count II in favor of Plaintiff and against Defendant The City of St. Louis, awarding:

a. Compensatory damages in excess of Two Million Dollars ($2,000,000.00);

b. Punitive damages against Defendant The City of St. Louis in excess of Five Million Dollars ($5,000,000.00);

c. Reasonable attorney's fees and costs incurred in this action; and

d. Such other and further relief as the Court deems just and proper, together with costs.

## COUNT III
## (ST. LOUIS CITY JUSTICE CENTER)

COMES NOW Plaintiff, in Count III of this Petition, and for her claim and cause of action against the SJC, states and alleges as follows:

17

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

77.    Plaintiff realleges and repleads each and every allegation contained in paragraphs 1 through 76 of this Petition as if fully set out herein.

78.    SJCCO Defendants were responsible for providing Brison with appropriate medical care and protection.

79.    SJCCO Defendants knew that Brison was on full suicide watch while he was detained in the SJC.

80.    SJCCO Defendants transferred Brison to the custody of the JDC.

81.    SJCCO Defendants had a duty to notify the JDC of Brison's status in the SJC before they transferred him to the JDC.

82.    SJCCO Defendants had a duty to transfer Brison with adequate information and in a manner that did not endanger his life and health.

83.    At all relevant times to this action, Brison did not have the capacity to protect himself.

84.    As a direct and proximate result of SJCCO Defendants' failure to notify the JDC, Brison was caused or provoked into killing himself while in the custody of the JDC.

85.    As a direct and proximate result of the SJC's negligent supervision, training, hiring, staffing, and actions through its agents, SJCCO Defendants, as more fully hereinafter set out, Brison was caused great physical, emotional, and psychological injuries that directly and proximately resulted from the reckless and negligence of the SJC in the following manner:

   a. Failure to undergo and/or provide training related to proper protection and care of detainees under its care for transfer to other jurisdictions;

   b. Failure to protect detainees under its care and control from death related to suicide;

18

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

c. Failure to provide training related to identifying recognizable serious medical needs and the proper procedures related to such needs and the sharing of that information with other jurisdictions;

d. Failure to identify serious medical needs and the proper procedures related to such needs; and

e. Failure to properly staff transfer of detainees in order to ensure proper protocol and procedures are followed.

86. The SJC's aforementioned negligence constitutes a deliberate indifference to serious medical and safety needs.

87. As a direct and proximate cause of the SJC's negligence, Plaintiff sustained loss because of Brison's death in the nature of pecuniary losses as well as the loss of Brison's companionship, comfort, counsel, support, guidance, and instruction.

88. As a direct and proximate result of one or more of the above referenced negligent acts or omissions, Brison was subjected to extreme pain, suffering, physical and emotional injury, fear, and shock prior to his death.

89. As a direct and proximate cause of Defendant's negligence, Plaintiff was required to incur expenses for the decedent's funeral and burial.

90. The acts of Defendant were intentional, wanton, malicious, oppressive, reckless, and/or callously indifferent to the rights of Brison, thus entitling Plaintiff to an award of punitive damages against Defendant.

WHEREFORE, Plaintiff prays the Court enter judgment in Count III in favor of Plaintiff and against Defendant St. Louis City Justice Center, awarding:

a. Compensatory damages in excess of Two Million Dollars ($2,000,000.00);

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

b. Punitive damages against Defendant St. Louis City Justice Center in excess of Five Million Dollars ($5,000,000.00);

c. Reasonable attorney's fees and costs incurred in this action; and

d. Such other and further relief as the Court deems just and proper, together with costs.

## COUNT IV
## (THE CITY OF ST. LOUIS)

COMES NOW Plaintiff, in Count IV of this Petition, and for her claim and cause of action against the COS, states and alleges as follows:

91. Plaintiff realleges and repleads each and every allegation contained in paragraphs 1 through 90 of this Petition as if fully set out herein.

92. Count IV is for damages related to violations of Brison's constitutional rights brought pursuant to 42 U.S.C. §1983. Plaintiff alleges that Defendant showed deliberate indifference to Brison's serious safety and medical needs, thus depriving Brison of his constitutional rights under the Fourth, Eighth, and Fourteenth Amendments.

93. Plaintiff further alleges that Defendant maintained policies, practices, and customs demonstrating deliberate and complete indifference to the constitutional rights of its citizens, and that said conduct caused the deprivation of Brison's rights secured under the United States Constitution, the laws of the United States, and the laws of the State of Missouri.

94. In committing the acts stated herein, the COS acted under color of law to deprive Brison of certain constitutional rights protected under the Fourth, Eighth, and Fourteenth Amendments, including but not limited to the following:

a. The right to be protected from self-inflicted harm;

b. The right to medical treatment for serious medical needs;

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

c. Engaging in conduct of abuse of power and authority which shocks the conscience and offends human dignity.

95. At all times relevant, the COS, acting through its agents and employees, was responsible for making policy for the SJC. SJCCO Defendants were acting pursuant to either official policy or the practice and customs of the COS and the SJC.

96. Acting under color of law, and pursuant to official policy, or custom and practice, the COS intentionally, knowingly, recklessly, and with deliberate indifference to the rights of the detainees of the COS and the SJC failed to hire, instruct, train, supervise, control, and/or discipline on a continuing basis SJCCO Defendants and other jailers and auxiliary personnel in the performance of their duties, which resulted in the direct deprivation of Brison's constitutional rights.

97. The policies, practices, customs, and usage of the COS directly caused and were the moving force of the constitutional violations inflicted on Brison, including the following:

a. As a matter of policy, practice, and/or custom, failing to undergo and/or provide training related to proper protection and care of detainees;

b. As a matter of policy, practice, and/or custom, failing to provide proper training related to screening detainees for serious medical needs;

c. As a matter of policy, practice, and/or custom, failing to provide proper training related to identifying recognizable serious medical needs and training in the proper procedures related to such needs, including Brison's;

d. As a matter of policy, practice, and/or custom, failing to identify serious medical needs and the proper procedures related to such needs, including Brison's;

e. As a matter of policy, practice, and/or custom, failing to provide adequate supervision over detainees in order to provide appropriate medical care to detainees in its custody and control, including Brison; and

f. As a matter of policy, practice, and/or custom, failing to train employees on the proper transfer of detainees with serious medical needs;

g. As a matter of policy, practice, and/or custom, failing to staff the transfer of detainees with serious medical needs;

h. As a matter of policy, practice, and/or custom, failing to supervise the transfer of detainees with serious medical needs;

i. As a matter of policy, practice, and/or custom, encouraging the type of misconduct at issue by failing to adequately train, supervise, and control corrections officers, jailers, and auxiliary personnel.

98. Defendant's failure to properly hire, train, supervise, staff, and discipline its officers, jailers, and/or auxiliary personnel resulted in an atmosphere where the failure to identify and document serious medical issues and report that information through the proper channels by its officers is routinely accepted and its officers are led to believe that their actions will not be scrutinized. This atmosphere leads to abuse by these officers, jailers, and/or auxiliary personnel, such as that which occurred in the instant case.

99. Defendant's failure to hire, train, supervise, staff, control, and discipline its officers was unreasonable, and Defendant is not entitled to qualified or sovereign immunity under Missouri or Federal law.

100. The COS had final decision making authority to establish municipal policy, practices, and custom.

101. The COS instituted policies, practices, and customs relating to hiring, firing, training, and supervising officers' conduct and staffing of officers, jailers, and/or auxiliary personnel.

102. The aforementioned policies, practices, customs, and procedures by the COS demonstrate a deliberate indifference to the constitutional rights of its citizens. By the actions described above, Defendant, acting under color of law, directly led to the deprivation of Brison's right to be protected from self-inflicted harm and Brison's right to medical treatment for serious medical needs.

103. As a direct and proximate result of Defendant's acts, Brison was caused to suffer extreme emotional and physical pain resulting in his death.

104. As a direct and proximate result of Defendant's acts, Brison was subjected to extreme pain, suffering, physical and emotional injury, fear, and shock prior to his death.

105. The acts of Defendant were intentional, wanton, malicious, oppressive, reckless, and/or callously indifferent to the rights of Brison, thus entitling Plaintiff to an award of punitive damages against Defendant.

106. In the event that Plaintiff prevails, she is also entitled to an award of attorney's fees and costs pursuant to 42 U.S.C. §1983.

WHEREFORE, Plaintiff prays the Court enter judgment in Count IV in favor of Plaintiff and against Defendant City of St. Louis, awarding:

a. Compensatory damages in excess of Two Million Dollars ($2,000,000.00);

b. Punitive damages against Defendant City of St. Louis in excess of Five Million Dollars ($5,000,000.00);

c. Reasonable attorney's fees and costs incurred in this action; and

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

d.  Such other and further relief as the Court deems just and proper, together with

costs.

## COUNT V
## (ST. LOUIS CITY JUSTICE CENTER)

COMES NOW Plaintiff, in Count V of this Petition, and for her claim and cause of action

against the SJC, states and alleges as follows:

107.    Plaintiff realleges and repleads each and every allegation contained in paragraphs

1 through 106 of this Petition as if fully set out herein.

108.    Count V is for damages related to violations of Brison's constitutional rights

brought pursuant to 42 U.S.C. §1983. Plaintiff alleges that Defendant showed deliberate

indifference to Brison's serious safety and medical needs, thus depriving Brison of his

constitutional rights under the Fourth, Eighth, and Fourteenth Amendments.

109.    Plaintiff further alleges that Defendant maintained policies, practices, and

customs demonstrating deliberate and complete indifference to the constitutional rights of

citizens, and that said conduct caused the deprivation of Brison's rights secured under the United

States Constitution, the laws of the United States, and the laws of the State of Missouri.

110.    In committing the acts complained of herein, the SJC acted under color of law to

deprive Brison of certain constitutional rights protected under the Fourth, Eighth, and Fourteenth

Amendments, including but not limited to the following:

a.  The right to be protected from self-inflicted harm;

b.  The right to medical treatment for serious medical needs;

c.  Engaging in conduct of abuse of power and authority which shocks the

conscience and offends human dignity.

111.    At all times relevant, the SJC, acting through its agents and employees was

24

responsible for making policy for the SJC. SJCCO Defendants were acting pursuant to either official policy or the practice and customs of the COS and the SJC.

112.    Acting under color of law and pursuant to official policy or custom and practice, the SJC intentionally, knowingly, recklessly, and with deliberate indifference to the rights of the detainees of the COS and the SJC failed to hire, instruct, train, supervise, control, and/or discipline on a continuing basis SJCCO Defendants and other jailers and auxiliary personnel in the performance of their duties, which resulted in the direct deprivation of Brison's constitutional rights.

113.    The policies, practices, customs, and usage of the SJC directly caused and were the moving force of the constitutional violations inflicted on Brison, including the following:

a. As a matter of policy, practice, and/or custom, failing to undergo and/or provide training related to proper protection and care of detainees;

b. As a matter of policy, practice, and/or custom, failing to provide proper training related to screening detainees for serious medical needs;

c. As a matter of policy, practice, and/or custom, failing to provide proper training related to identifying recognizable serious medical needs and training in the proper procedures related to such needs, including Brison's;

d. As a matter of policy, practice, and/or custom, failing to identify serious medical needs and the proper procedures related to such needs, including Brison's;

e. As a matter of policy, practice, and/or custom, failing to provide adequate supervision over detainees in order to provide appropriate medical care to detainees in its custody and control, including Brison; and

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

f. As a matter of policy, practice, and/or custom, failing to train employees on the proper transfer of detainees with serious medical needs;

g. As a matter of policy, practice, and/or custom, failing to staff the transfer of detainees with serious medical needs;

h. As a matter of policy, practice, and/or custom, failing to supervise the transfer of detainees with serious medical needs;

i. As a matter of policy, practice, and/or custom, encouraging the type of misconduct at issue by failing to adequately train, supervise, and control corrections officers, jailers, and auxiliary personnel.

114. Defendant's failure to properly hire, train, supervise, staff, and discipline its officers, jailers, and/or auxiliary personnel resulted in an atmosphere where the failure to identify and document serious medical issues and report that information through the proper channels by its officers is routinely accepted and its officers are led to believe that their actions will not be scrutinized. This atmosphere leads to abuse by these officers, jailers, and/or auxiliary personnel, such as that which occurred in the instant case.

115. Defendant's failure to hire, train, supervise, staff, control, and discipline its officers was unreasonable, and Defendant is not entitled to qualified or sovereign immunity under Missouri or Federal law.

116. The SJC had final decision making authority to establish municipal policy, practices, and custom.

117. The SJC instituted policies, practices, and customs relating to hiring, firing, training, and supervising officers' conduct and staffing of officers, jailers, and/or auxiliary personnel.

118.     The aforementioned policies, practices, customs, and procedures by the SJC demonstrate a deliberate indifference to the constitutional rights of citizens. By the actions described above, Defendant, acting under color of law, directly led to the deprivation of Brison's right to be protected from self-inflicted harm and Brison's right to medical treatment for serious medical needs.

119.     As a direct and proximate result of Defendant's acts, Brison was caused to suffer extreme emotional and physical pain resulting in his death.

120.     As a direct and proximate result of Defendant's acts, Brison was subjected to extreme pain, suffering, physical and emotional injury, fear, and shock prior to his death.

121.     The acts of Defendant were intentional, wanton, malicious, oppressive, reckless, and/or callously indifferent to the rights of Brison, thus entitling Plaintiff to an award of punitive damages against Defendant.

122.     In the event that Plaintiff prevails, she is also entitled to an award of attorney's fees and costs pursuant to 42 U.S.C. §1983.

WHEREFORE, Plaintiff prays the Court enter judgment in Count V in favor of Plaintiff and against Defendant St. Louis City Justice Center, awarding:

   a.   Compensatory damages in excess of Two Million Dollars ($2,000,000.00);

   b.   Punitive damages against Defendant St. Louis City Justice Center in excess of Five Million Dollars ($5,000,000.00);

   c.   Reasonable attorney's fees and costs incurred in this action; and

   d.   Such other and further relief as the Court deems just and proper, together with costs.

**COUNT VI**
**(SJCCO DEFENDANTS)**

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

COMES NOW Plaintiff, in Count VI of this Petition, and for her claim and cause of action against SJCCO Defendants, states and alleges as follows:

123.  Plaintiff realleges and repleads each and every allegation contained in paragraphs 1 through 122 of this Petition as if fully set out herein.

124.  Count VI of this Petition is for damages in relation to violations of Brison's constitutional rights brought pursuant to 42 U.S.C. §1983. Plaintiff alleges that SJCCO Defendants showed deliberate indifference to Brison's serious medical needs, negligently failed to notify transferring jurisdictions of Brison's suicidal tendencies, and further deprived him of his constitutional rights under the Fourth, Eighth, and Fourteenth Amendments of the Constitution.

125.  Plaintiff further alleges that SJCCO Defendants maintained policies, practices, and customs demonstrating deliberate and complete indifference to the constitutional rights of citizens, and that said conduct caused the deprivation of Brison's rights secured under the United States Constitution, the laws of the United States, and the laws of the State of Missouri.

126.  In committing the acts complained of herein, SJCCO Defendants acted under color of law to deprive Brison of certain constitutional rights protected under the Fourth, Eighth, and Fourteenth Amendments, including but not limited to the following:

   a. The right to be protected from self-inflicted harm;

   b. The right to medical treatment for serious medical needs;

   c. Engaging in conduct of abuse of power and authority which shocks the conscience and offends human dignity.

127.  SJCCO Defendants actions, under color of law, directly led to the deprivation of

28

Brison's right to be protected from self-inflicted harm and Brison's right to medical treatment for serious medical needs, including:

 a. Failure to protect detainees under their care related to serious medical needs;

 b. Failure to properly document serious medical needs and advise JDC of needs;

 c. Failure to obtain relevant information related to detainee's serious medical needs;

 d. Failure to follow proper procedures related to the transfer of detainees with serious medical needs; and

 e. Failure to properly supervise detainee with serious medical needs.

128.   As a direct and proximate result of SJCCO Defendants' acts, Brison was caused to suffer extreme emotional and physical pain resulting in his death.

129.   As a direct and proximate result of SJCCO Defendants' acts, Brison was subjected to extreme pain, suffering, physical and emotional injury, fear, and shock prior to his death.

130.   The acts of SJCCO Defendants were intentional, wanton, malicious, oppressive, reckless, and/or callously indifferent to the rights of Brison, thus entitling Plaintiff to an award of punitive damages against SJCCO Defendants.

WHEREFORE, Plaintiff prays the Court enter judgment in Count VI in favor of Plaintiff and against SJCCO Defendants, awarding:

 a. Compensatory damages in excess of Two Million Dollars ($2,000,000.00);

 b. Punitive damages against SJCCO Defendants, in their individual capacities, in excess of Five Million Dollars ($5,000,000.00);

 c. Reasonable attorney's fees and costs incurred in this action; and

 d. Such other and further relief as the Court deems just and proper, together with

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

costs.

## COUNT VII
## (JDCCO DEFENDANTS)

COMES NOW Plaintiff, in Count VII of this Petition, and for her claim and cause of action against JDCCO Defendants, states and alleges as follows:

131.    Plaintiff realleges and repleads each and every allegation contained in paragraphs 1 through 130 of this Petition as if fully set out herein.

132.    On or about October 4, 2014, Brison was taken into custody by JDCCO Defendants.

133.    JDCCO Defendants failed to follow proper procedure, protocol, practice, and policy when conducting Brison's medical intake and assessing Brison for suicide risk.

134.    During the booking process, Brison acted erratically and appeared troubled; he also displayed other visual signs of serious medical needs.

135.    JDCCO Defendants deprived Brison of his inhaler.

136.    JDCCO Defendants placed Brison in Cell 4 Block B ("C4BB") in isolation and without proper monitoring.

137.    Prior to placing Brison in C4BB, JDCCO Defendants knew that at least one other inmate had previously committed suicide in C4BB due to lack of monitoring and isolation.

138.    Thereafter, Brison hung himself from his cell door.

139.     JDCCO Defendants knew, or should have known, that Brison was suffering from a serious medical condition that needed attention and medication; in complete, deliberate, and reckless indifference to his serious needs, JDCCO Defendants failed to properly monitor and provide for Brison.

140.    JDCCO Defendants demonstrated a deliberate indifference to Brison's medical

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

and safety needs, thus causing or contributing to his death.

141.    That as a direct and proximate result of JDCCO Defendants' negligent and reckless screening, supervision, monitoring, staffing, and training, Brison was caused great physical, emotional, and psychological injuries which directly and proximately resulted from the reckless and negligence of the JDCCO Defendants in the following manner:

    a. Failure to properly screen detainees for serious medical conditions;

    b. Failure to identify recognizable serious medical needs and the proper procedures related to such needs, including Brison's;

    c. Failure to provide adequate supervision over detainees in order to provide appropriate medical care to detainees in their custody and control, including Brison;

    d. Failure to monitor video surveillance; and

    e. As a matter of both policy and practice, encouraging the type of misconduct at issue by failing to adequately train, supervise, and control corrections officers, jailers, and auxiliary personnel.

142.    As a direct and proximate cause of JDCCO Defendants' actions, Plaintiff sustained loss because of Brison's death in the nature of pecuniary losses as well as the loss of Brison's companionship, comfort, counsel, support, guidance, and instruction.

143.    As a direct and proximate result of one or more of the above referenced negligent acts or omissions, Brison was subjected to extreme pain, suffering, physical and emotional injury, fear, and shock prior to his death.

144.    As a direct and proximate cause of JDCCO Defendants' negligence, Plaintiff was required to incur expenses for Brison's funeral and burial.

145. The acts of JDCCO Defendants were intentional, wanton, malicious, oppressive, reckless, and/or callously indifferent to the rights of Brison, thus entitling Plaintiff to an award of punitive damages against JDCCO Defendants.

146. If Plaintiff prevails, she is entitled to recover attorney fees pursuant to 42 U.S.C. §1983.

WHEREFORE, Plaintiff prays the Court enter judgment in Count VII in favor of Plaintiff and against JDCCO Defendants, awarding:

a. Compensatory damages in excess of Two Million Dollars ($2,000,000.00);

b. Punitive damages against JDCCO Defendants, in their individual capacities, in excess of Five Million Dollars ($5,000,000.00);

c. Reasonable attorney's fees and costs incurred in this action; and

d. Such other and further relief as the Court deems just and proper, together with costs.

## COUNT VIII
### (THE CITY OF JENNINGS)

COMES NOW Plaintiff, in Count VIII of this Petition, and for her claim and cause of action against the COJ, states and alleges as follows:

147. Plaintiff realleges and repleads each and every allegation contained in paragraphs 1 through 146 of this Petition as if fully set out herein.

148. JDCCO Defendants were on duty on October 4, 2014 and responsible for providing Brison with appropriate medical care and supervision.

149. JDCCO Defendants were employed by and/or acting as agents of the COJ.

150. On October 4, 2014, JDCCO Defendants caused and/or allowed Brison to hang himself from his cell door.

151. JDCCO Defendants had a duty to provide protection and monitor Brison while under their control and custody.

152. At all relevant times to this action, Brison did not have the capacity to protect himself.

153. That as a direct and proximate result of Brison's high anxiety, lack of medical attention, placement in solitary confinement, and emotional injury, Brison was caused or provoked into killing himself while in the custody of JDCCO Defendants.

154. That as a direct and proximate result of COJ's negligent supervision, monitoring, training, staffing, and actions through its agents, and the dangerous condition of the JDC, as more fully hereinafter set out, Brison was caused great physical, emotional, and psychological harm that directly and proximately resulted from the recklessness and negligence of the COJ in the following manner:

    a. Failure to undergo and/or provide training related to proper protection and care of detainees under its care;

    b. Failure to provide proper training regarding the screening of detainees for serious medical conditions;

    c. Failure to provide training related to identifying recognizable serious medical needs and the proper procedures related to such needs, including Brison's;

    d. Failure to identify serious medical needs and proper procedures related to such needs, including Brison's;

    e. Failure to provide adequate supervision over detainees in order to provide appropriate medical care to detainees in its custody and control, including Brison; and

Electronically Filed - City Of St. Louis - February 17, 2017 - 01:49 PM

f. As a matter of both policy and practice, encouraged the type of misconduct at issue by failing to adequately train, supervise, and control corrections officers, jailers, and auxiliary personnel.

155. The COJ's aforementioned negligence constitutes a deliberate indifference to serious medical and safety needs.

156. Moreover, at the time of Brison's detention, the JDC was in a dangerous condition in the following respect:

a. The jail cells were secluded from the view of corrections officers and staff, allowing for insufficient monitoring and supervision, and allowing for the suicide of inmates without detection;

b. The video surveillance system was not properly maintained, supervised, and/or operated, allowing for the suicide of inmates without detection;

c. The failure of the video surveillance equipment resulted in corrections officers, jailers, and auxiliary personnel being left entirely unsupervised or monitored when not in the direct view of a supervisor or supervising officer;

d. The failure of radio equipment resulted in corrections officers being unable to notify others of emergency situations in a timely manner; and

e. The cells included materials, such as blankets, that were readily available to inmates with serious medical needs and used for the purpose of committing suicide.

157. The dangerous condition of the JDC, which was negligently created by JDCCO Defendants, of which the COJ had notice, created a reasonably foreseeable risk of the type of harm sustained by Brison.

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

158.    Despite notice of the dangerous condition, the COJ failed to remedy said condition. As a direct and proximate result of the carelessness and negligence of the COJ, Brison was subjected to extreme emotional and physical pain, injury, and suffering resulting in his death.

159.    As a direct and proximate result of the COJ's negligence, Plaintiff sustained losses because of Brison's death in the nature of pecuniary losses, as well as the loss of Brison's companionship, comfort, counsel, support, guidance, and instruction.

160.    As a direct and proximate result of one or more of the above referenced negligent acts or omissions, Brison was subjected to extreme pain, suffering, physical and emotional injury, fear, and shock prior to his death.

161.    As a direct and proximate result of the COJ's negligence, Plaintiff was required to incur expenses for the decedent's funeral and burial.

162.    The acts of JDCCO Defendants were intentional, wanton, malicious, oppressive, reckless, and/or callously indifferent to the rights of Brison, thus entitling Plaintiff to an award of punitive damages against Defendant.

163.    If Plaintiff prevails, she is entitled to recover attorney fees pursuant to 42 U.S.C. §1983.

WHEREFORE, Plaintiff prays the Court enter judgment in Count VIII in favor of Plaintiff and against The City of Jennings, awarding:

a.    Compensatory damages in excess of Two Million Dollars ($2,000,000.00);

b.    Punitive damages against The City of Jennings in excess of Five Million Dollars ($5,000,000.00);

c.    Reasonable attorney's fees and costs incurred in this action; and

d.     Such other and further relief as the Court deems just and proper, together with costs.

## COUNT IX
## (THE CITY OF JENNINGS DETENTION CENTER)

COMES NOW Plaintiff, in Count IX of this Petition, and for her claim and cause of action against the JDC, states and alleges as follows:

164.     Plaintiff realleges and repleads each and every allegation contained in paragraphs 1 through 163 of this Petition as if fully set out herein.

165.     JDCCO Defendants were on duty on October 4, 2014 and responsible for providing Brison with appropriate medical care and protection.

166.     On October 4, 2014, JDCCO Defendants caused and/or allowed Brison to hang himself.

167.     JDCCO Defendants had a duty to provide protection and monitor Brison while he was under their control and custody.

168.     At all relevant times to this action, Brison did not have the capacity to protect himself.

169.     That as a direct and proximate result of JDCCO Defendants' failure to monitor and assess serious medical issues, Brison was caused or provoked into killing himself while in the custody of JDCCO Defendants.

170.     That as a direct and proximate result of the JDC's negligent supervision, monitoring, staffing, training, and actions through its agents and the dangerous condition of the JDC, as more fully hereinafter set out, Brison was caused great physical, emotional, and psychological harm that directly and proximately resulted from the recklessness and negligence of the JDC in the following manner:

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

a. Failure to undergo and/or provide training related to proper protection and care of detainees under its care;

b. Failure to provide proper training regarding the screening of detainees for serious medical conditions;

c. Failure to provide training related to identifying recognizable serious medical needs and the proper procedures related to such needs, including Brison's;

d. Failure to identify serious medical needs and proper procedures related to such needs, including Brison's;

e. Failure to provide adequate supervision over detainees in order to provide appropriate medical care to detainees in its custody and control, including Brison; and

f. As a matter of both policy and practice, encouraged the type of misconduct at issue by failing to adequately train, supervise, and control corrections officers, jailers, and auxiliary personnel.

171.   The JDC's aforementioned negligence constitutes a deliberate indifference to serious medical and safety needs.

172.   Moreover, at the time of Brison's death, the JDC was in a dangerous condition in that:

a. The jail cells were secluded from the view of corrections officers and staff, allowing for insufficient monitoring and supervision, and allowing for the suicide of inmates without detection;

b. The video surveillance system was not properly maintained, supervised, and/or operated, allowing for the suicide of inmates without detection;

c. The failure of the video surveillance equipment resulted in corrections officers, jailers, and auxiliary personnel being left entirely unsupervised or monitored when not in the direct view of a supervisor or supervising officer;

d. The failure of radio equipment resulted in corrections officers being unable to notify others of emergency situations in a timely manner; and

e. The cells included materials, such as blankets, that were readily available to inmates with serious medical needs and used for the purpose of committing suicide.

173.    The dangerous condition of the JDC, which was negligently created by JDCCO Defendants, of which the JDC had notice, created a reasonably foreseeable risk of the type of harm sustained by Brison.

174.    Despite notice of the aforesaid dangerous condition, the JDC failed to remedy same.

175.    As a direct and proximate result of the carelessness and negligence of the JDC, Brison was subjected to extreme emotional and physical pain, injury, and suffering, which resulted in his death.

176.    As a direct and proximate cause of the JDC's negligence, Plaintiff sustained loss because of Brison's death in the nature of pecuniary losses as well as the loss of Brison's companionship, comfort, counsel, support, guidance, and instruction.

177.    As a direct and proximate result of one or more of the above referenced negligent acts or omissions, Brison was subjected to extreme pain, suffering, physical and emotional injury, fear, and shock prior to his death.

178.    As a direct and proximate cause of the JDC's negligence, Plaintiff was required

38

to incur expenses for the decedent's funeral and burial.

179.    The acts of JDCCO Defendants were intentional, wanton, malicious, oppressive, reckless and/or callously indifferent to the rights of Brison, thus entitling Plaintiff to an award of punitive damages against Defendant.

WHEREFORE, Plaintiff prays the Court enter judgment in Count IX in favor of Plaintiff and against The City of Jennings Detention Center, awarding:

    a.   Compensatory damages in excess of Two Million Dollars ($2,000,000.00);

    b.   Punitive damages against The City of Jennings Detention Center in excess of Five Million Dollars ($5,000,000.00);

    c.   Reasonable attorney's fees and costs incurred in this action; and

    d.   Such other and further relief as the Court deems just and proper, together with costs.

## COUNT X
## (THE CITY OF JENNINGS)

COMES NOW Plaintiff, in Count X of this Petition, and for her claim and cause of action against the COJ, states and alleges as follows:

180.    Plaintiff realleges and repleads each and every allegation contained in paragraphs 1 through 179 of this Petition as if fully set out herein.

181.    Count X is for damages related to violations of Brison's constitutional rights brought pursuant to 42 U.S.C. §1983. Plaintiff alleges that the COJ showed deliberate indifference to Brison's serious safety and medical needs, and deprived Brison of his constitutional rights under the Fourth, Eighth, and Fourteenth Amendments of the Constitution.

182.    Plaintiff further alleges that the COJ maintained policies, practices, and

customs demonstrating deliberate and complete indifference to the constitutional rights of its citizens, and that said conduct caused the deprivation of Brison's rights secured under the United States Constitution, the laws of the United States, and the laws of the State of Missouri.

183. In committing the acts complained of herein, the COJ acted under color of law to deprive Brison of certain constitutional rights protected under the Fourth, Eighth, and Fourteenth Amendments, including but not limited to the following:

    a. The right to be protected from self-inflicted harm;

    b. The right to medical treatment for serious medical needs;

    c. The right to be free from bodily harm;

    d. Engaging in conduct of abuse of power and authority which shocks the conscience and offends human dignity.

184. At all times relevant, the COJ, acting through its agents and employees who were responsible for making policy for the JDC, was acting pursuant to either official policy or the practice, custom, and usage of the COJ and the JDC.

185. Acting under color of law, and pursuant to official policy or custom and practice, the COJ intentionally, knowingly, recklessly, and with deliberate indifference to the rights of the detainees of the COJ and the JDC failed to hire, instruct, train, supervise, control, and/or discipline, on a continuing basis, JDCCO Defendants and other jailers and auxiliary personnel in the performance of their duties, which resulted in the direct deprivation of Brison's constitutional rights. The policies, practices, customs, and usage of the COJ directly caused and were the moving force of the constitutional violations inflicted on Brison, including:

    a. As a matter of policy, practice, and/or custom, failing to undergo and/or provide training related to proper protection and care of detainees under its care;

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

b. As a matter of policy, practice, and/or custom, failing to supervise detainees in its care in order to protect detainees under their care;

c. As a matter of policy, practice, and/or custom, failing to provide proper training related to screening detainees for serious medical needs;

d. As a matter of policy, practice, and/or custom, failing to provide training related to identifying recognizable serious medical needs and the proper procedures related to such needs, including Brison's;

e. As a matter of policy, practice, and/or custom, failing to identify serious medical needs and the proper procedures related to such needs, including Brison's;

f. As a matter of policy, practice, and/or custom, failing to provide adequate supervision over detainees in order to provide appropriate medical care to detainees in its custody and control, including Brison; and

g. As a matter of policy, practice, and/or custom, as a matter of both policy and practice, encouraging the type of misconduct at issue by failing to adequately train, supervise, and control corrections officers, jailers, and auxiliary personnel.

186.     Defendant's failure to properly hire, train, supervise, staff, and discipline its officers, jailers, and/or auxiliary personnel resulted in an atmosphere where negligent behavior by its officers is routinely accepted, and its officers are led to believe that their actions and their use of improper and illegal procedures will not be scrutinized. This atmosphere leads to abuse by these officers, jailers, and/or auxiliary personnel, such as that which occurred in the instant case. Defendant's failure to hire, train, supervise, staff, control, and discipline its officers was unreasonable and the Defendant is not entitled to qualified or sovereign immunity under Missouri or Federal law.

187.  The COJ had final decision making authority to establish municipal policy, practice, and custom.

188.  The COJ instituted policies, practices, and customs relating to hiring, firing, training, and supervision of officer conduct and staffing of officers, jailers, and/or auxiliary personnel.

189.  The aforementioned policies, practices, customs, and procedures by the COJ demonstrate a deliberate indifference to the constitutional rights of citizens.

190.  By the actions described above, the Defendant, acting under color of law, directly led to the deprivation of Brison's

    a.  Right to be protected from self-inflicted harm;

    b.  Right to medical treatment for serious medical needs; and

    c.  Right to be free from unreasonable intrusion on one's bodily integrity.

191.  As a direct and proximate result of Defendant's acts, Brison was caused to suffer extreme emotional and physical pain resulting in his death.

192.  As a direct and proximate result of Defendant's acts, Brison was subjected to extreme pain, suffering, physical and emotional injury, fear, and shock prior to his death.

193.  The acts of Defendant were intentional, wanton, malicious, oppressive, reckless, and/or callously indifferent to the rights of Brison, thus entitling Plaintiff to an award of punitive damages against Defendant.

WHEREFORE, Plaintiff prays the Court enter judgment in Count X in favor of Plaintiff and against The City of Jennings, awarding:

    a.  Compensatory damages in excess of Two Million Dollars ($2,000,000.00);

    b.  Punitive damages against The City of Jennings in excess of Five Million Dollars

($5,000,000.00);

c.  Reasonable attorney's fees and costs incurred in this action; and

d.  Such other and further relief as the Court deems just and proper, together with costs.

## COUNT XI
## (THE CITY OF JENNINGS)

COMES NOW Plaintiff, in Count XI of this Petition, and for her claim and cause of action against the COJ, states and alleges as follows:

194.    Plaintiff realleges and repleads each and every allegation contained in paragraphs 1 through 193 of this Petition as if fully set out herein.

195.    On August 28, 2012, Brison was charged with stealing three sticks of deodorant valued at $17.50 from a Family Dollar Store.

196.    As a result of that charge, Brison paid the COJ $300.00 as bond in the case.

197.    Brison subsequently failed to attend a court-mandated class about financial responsibility because he was unable to afford the class.

198.    In spite of having already spent time in the JDC and having paid a $300 bond that was kept by the COJ, the COJ issued a warrant for Brison's arrest and issued a second bond of $500. In total, the COJ issued $800.00 in bonds related to a petty theft of $17.50.

199.    On October 3, 2014, approximately two years after Brison's arrest for the theft, the COJ sought to enforce the warrant against Brison and had him transferred to the JDC related to the theft.

200.    The transfer related to the warrant was an attempt to collect the outstanding $500.00 from Brison related to the second bond issued by the COJ and this attempt was entirely consistent with the COJ's use of the penal system to create revenue for the COJ.

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

201.    The only reason Brison was in the JDC on the day he hung himself was because he was a victim of the COJ's profit-driven penal practices.

202.    Brison was among numerous citizens who were imprisoned and detained solely because they could not afford the exorbitant fines imposed by the COJ and therefore unable to pay their debt to the COJ.

203.    As a result of being unable to pay their debt, warrants were issued, additional fines imposed, and citizens and of the surrounding area, including Brison, were threatened, abused, and left to languish in confinements at the mercy of COJ officials until they, or their families, could produce enough money to buy their freedom.

204.    The detentions of Brison, and two others before him, have caused these three individuals to commit suicide. Like Brison, at least one of those individuals was being detained on extremely old outstanding warrants related to minor offenses, such as unpaid traffic tickets.

205.    The COJ's modern debtors' prison scheme has become increasingly profitable to the COJ, earning millions of dollars over the past several years, at the extreme detriment to the citizenry, including Brison. The COJ's pursuit of profit through the penal system has devastated poor citizens by trapping them for years in a cycle of increased fees, debts, extortion, humiliation, desperation, and cruel treatment, including unwarranted and unjustified confinement.

206.    The COJ's debtors' prison scheme is operated through the threat of confinement and the practice of confining, thereby extorting money from debtors, including Brison, debtors who are otherwise unable to afford to pay both the basic necessities of life and the extreme fines imposed on them by the COJ.

207.    The COJ's harsh imposition of fines and detention for the purpose of creating

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

revenue has resulted in a citizenry that knows that impoverished debtors will be arrested and indefinitely detained until they can raise enough money from family and friends to buy their freedom, and this scheme was designed to get the poor and vulnerable to pay onerous fines in order to avoid being illegally jailed.

208.    At all times relevant, it is the practice, policy, and custom of the COJ to jail people, without conducting any inquiry into a detainee's ability to pay and without considering alternatives to imprisonment, as required by Federal and Missouri law, when they cannot afford to pay money owed to the City resulting from minor offenses.

209.    At all times relevant, it is the practice, policy, and custom of the COJ to detain prisoners indefinitely unless and until the detainee's family or friends can make a monetary payment to buy their freedom from the COJ.

210.    At all times relevant, it is the practice, policy, and custom of the COJ to hold detainees for as long as they can, exhausting all possible measures to extract money from the detainee, and only releasing the detainee upon payment or after it is determined that further profit could not be obtained through detention.

211.    The actions of the COJ in operating its detention center as a revenue source and for the purpose of profit are a violation of 42 U.S.C. § 1983, as well as the First, Fourth, Sixth, Thirteenth, and Fourteenth Amendments of the United States Constitution, including the violation of Brison's rights under these laws.

212.    The Fourteenth Amendment's due process and equal protection clause prohibits the imprisonment of persons for failure to pay fines owed to the government if that person is indigent and unable to pay. The COJ's actions violated the law in the following ways:

      a.    Imprisoning individuals, including Brison, when they could not afford to pay the debts allegedly owed for minor offenses;

b. Operating their penal system for the purpose of profit and not for judicial ends;

c. Detaining individuals, including Brison, without conducting any inquiry into their ability to pay imposed fines;

d. Detaining individuals, including Brison, without conducting any inquiry into alternatives to detention as required by the Constitution;

e. Imposing arbitrary and changing amounts of fines on detainees, including on Brison, in order to maximize profit;

f. Detaining individuals, including Brison, indefinitely without any meaningful legal process through which to determine ability to pay; and

g. Issuing arrest warrants, including to Brison, against those who have not paid their debt from old judgments related to minor infractions.

213. At all times relevant, the COJ, acting through its agents and employees who were responsible for making policy for the JDC, were acting pursuant either to official policy or the practice, custom, and usage of the COJ and the JDC.

214. Acting under color of law and pursuant to official policy or custom and practice, the COJ intentionally, knowingly, recklessly, and with deliberate indifference to the rights of the detainees of the COJ and the JDC, violated the rights of Brison and subjected him to illegal actions and treatment for the sole purpose of obtaining revenue through its judicial system. The policies, practices, customs, and usage of the COJ directly caused and were the moving force of the constitutional violations inflicted on Brison.

215. Defendant's actions resulted in an atmosphere where the extortion of detainees, including Brison, is routinely accepted and its officers are led to believe that their actions and their use of improper and illegal force will not be scrutinized. This atmosphere leads to abuse by these officers, jailers, and/or auxiliary personnel, such as that which occurred in the instant case.

216. Defendant's policies, practices, customs, and procedures were unreasonable and the Defendant is not entitled to qualified or sovereign immunity under Missouri or Federal law.

217. The COJ had final decision-making authority to establish municipal policy, practice, and custom.

218. The COJ instituted policies, practices, and customs relating to the imposition of fines on detainees, including Brison, and the prolonged imprisonment of detainees.

219. The aforementioned policies, practices, customs, and procedures imposed on Brison directly caused or contributed to cause Brison's death.

220. The aforementioned policies, practices, customs, and procedures by the COJ demonstrate a deliberate indifference to the constitutional rights of its citizens.

221. As a direct and proximate result of Defendant's acts, Brison was caused to suffer extreme emotional and physical pain resulting in his death.

222. As a direct and proximate result of Defendant's acts, Brison was subjected to extreme pain, suffering, physical and emotional injury, fear, and shock prior to his death.

223. The acts of Defendant were intentional, wanton, malicious, oppressive, reckless, and/or callously indifferent to the rights of Brison, thus entitling Plaintiff to an award of punitive damages against Defendant.

224. In the event that Plaintiff prevails, she is also entitled to an award of attorney's fees and costs pursuant to 42 U.S.C. § 1983.

WHEREFORE, Plaintiff prays the Court enter judgment in Count XI in favor of Plaintiff and against The City of Jennings, awarding:

a. Compensatory damages in excess of Two Million Dollars ($2,000,000.00);

b. Punitive damages against The City of Jennings in excess of Five Million Dollars ($5,000,000.00);

c. Reasonable attorney's fees and costs incurred in this action; and

d. Such other and further relief as the Court deems just and proper, together

47

with costs.

COUNT XII

## COUNT XII
## (CITY OF JENNINGS DETENTION CENTER)

COMES NOW Plaintiff, in Count XII of this Petition, and for her claim and cause of action against the JDC, states and alleges as follows:

225.    Plaintiff realleges and repleads each and every allegation contained in paragraphs 1 through 224 of this Petition as if fully set out herein.

226.    Count XII of this Petition is for damages in relation to violations of Brison's constitutional rights brought pursuant to 42 U.S.C. §1983. Plaintiff alleges that Defendant showed deliberate indifference to Brison's serious safety and medical needs and deprived Brison of his constitutional rights under the Fourth, Eighth, and Fourteenth Amendments of the Constitution.

227.    Plaintiff further alleges that Defendant maintained policies, practices, and customs demonstrating deliberate and complete indifference to the constitutional rights of citizens, and that said conduct caused the deprivation of Brison's rights secured under the United States Constitution, the laws of the United States, and the laws of the State of Missouri.

228.    In committing the acts complained of herein, the JDC acted under color of law to deprive Brison of certain constitutional rights protected under the Fourth, Eighth, and Fourteenth Amendments, including but not limited to the following:

   a. The right to be protected from self-inflicted harm;

   b. The right to medical treatment for serious medical needs; and

   c. Engaging in conduct of abuse of power and authority which shocks the
      conscience and offends human dignity.

229.    At all times relevant, JDCCO Defendants, acting under the direction and control

48

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

of the COJ and/or JDC, which acted through its agents and employees who were responsible for making policy for the JDC, were acting pursuant either to official policy or the practice, custom, and usage of the COJ and JDC.

230.     Acting under color of law, and pursuant to official policy or custom and practice, the JDC intentionally, knowingly, recklessly and with deliberate indifference to the rights of the detainees of the COJ and JDC failed to hire, instruct, train, supervise, control, and/or discipline on a continuing basis JDCCO Defendants and other jailers and auxiliary personnel in the performance of their duties, which resulted in the direct deprivation of Brison's constitutional rights. The policies, practices, customs, and usage of the JDC directly caused and were the moving force of the constitutional violations inflicted on Brison including:

   a.   As a matter of policy, practice, and/or custom, failing to undergo and/or provide training related to proper protection and care of detainees under its custody;

   b.   As a matter of policy, practice, and/or custom, failing to supervise detainees in its custody, in order to protect detainees under its custody;

   c.   As a matter of policy, practice, and/or custom, failing to provide proper training related to screening detainees for serious medical needs;

   d.   As a matter of policy, practice, and/or custom, failing to provide training related to identifying recognizable serious medical needs and the proper procedures related to such needs, including Brison's;

   e.   As a matter of policy, practice, and/or custom, failing to identify serious medical needs and the proper procedures related to such needs, including Brison's;

f.  As a matter of policy, practice, and/or custom, failing to provide adequate supervision over detainees in order to provide appropriate medical care to detainees in its custody and control, including Brison; and

g.  As a matter of policy, practice, and/or custom, as a matter of both policy and practice, encouraging the type of misconduct at issue by failing to adequately train, supervise and control corrections officers, jailers and auxiliary personnel.

231.  Defendant's failure to properly hire, train, supervise, staff, and discipline its officers, jailers, and/or auxiliary personnel resulted in an atmosphere where negligence by its officers is routinely accepted and its officers are led to believe that their actions and their use of improper and illegal policies will not be scrutinized. This atmosphere leads to abuse by these officers, jailers, and/or auxiliary personnel, such as that which occurred in the instant case. Defendant's failure to hire, train, supervise, staff, control, and discipline its officers was unreasonable and the Defendant is not entitled to qualified or sovereign immunity under Missouri or Federal law.

232.  The JDC had final decision making authority to establish municipal policy, practice, and custom.

233.  The JDC instituted policies, practices, and customs relating to hiring, firing, training, supervision of officer conduct, and staffing of officers, jailers, and/or auxiliary personnel.

234.  The aforementioned policies, practices, customs, and procedures by the JDC demonstrate a deliberate indifference to the constitutional rights of citizens.

235.  By the actions described above, Defendant, acting under color of law, directly led to the deprivation of Brison's

Electronically Filed - City of St. Louis - February 17, 2017 - 01:49 PM

        a. Right to be protected from self-inflicted harm;

        b. Right to medical treatment for serious medical needs; and

        c. Right to freedom from bodily harm.

236.    As a direct and proximate result of Defendant's acts, Brison was caused to suffer extreme emotional and physical pain resulting in his death.

237.    As a direct and proximate result of Defendant's acts, Brison was subjected to extreme pain, suffering, physical and emotional injury, fear, and shock prior to his death.

238.    The acts of Defendant were intentional, wanton, malicious, oppressive, reckless, and/or callously indifferent to the rights of Brison, thus entitling Plaintiff to an award of punitive damages against Defendant.

239.    In the event that Plaintiff prevails, she is also entitled to an award of attorney's fees and costs pursuant to 42 U.S.C. §1983.

WHEREFORE, Plaintiff prays the Court enter judgment in Count XII in favor of Plaintiff and against Defendant The City of Jennings Detention Center, awarding:

        a. Compensatory damages in excess of Two Million Dollars ($2,000,000.00);

        b. Punitive damages against The City of Jennings Detention Center in excess of Five Million Dollars ($5,000,000.00);

        c. Reasonable attorney's fees and costs incurred in this action; and

        d. Such other and further relief as the Court deems just and proper, together with costs.

### COUNT XIII
### (JDCCO DEFENDANTS)

COMES NOW Plaintiff, in Count XIII of this Petition, and for her claim and cause of action against JDCCO Defendants, states and alleges as follows:

240.    Plaintiff realleges and repleads each and every allegation contained in paragraphs

1 through 239 of this Petition, as if fully set out herein.

241.    Count XIII of this Petition is for damages in relation to violations of Brison's constitutional rights brought pursuant to 42 U.S.C. §1983. Plaintiff alleges that JDCCO Defendants showed deliberate indifference to Brison's serious medical needs, negligently failed to recognize Brison's suicidal tendencies, and further deprived him of his constitutional rights under the Fourth, Eighth, and Fourteenth Amendments of the Constitution.

242.    Plaintiff further alleges that JDCCO Defendants maintained policies, practices, and customs demonstrating deliberate and complete indifference to the constitutional rights of citizens, and that said conduct caused the deprivation of Brison's rights secured under the United States Constitution, the laws of the United States, and the laws of the State of Missouri.

243.    In committing the acts complained of herein, JDCCO Defendants acted under color of law to deprive Brison of certain constitutional rights protected under the Fourth, Eighth, and Fourteenth Amendments, including but not limited to the following:

  a.  The right to be protected from self-inflicted harm;

  b.  The right to medical treatment for serious medical needs; and

  c.  Engaging in conduct of abuse of power and authority which shocks the conscience and offends human dignity.

244.    By the actions described above, JDCCO Defendants, acting under color of law, directly led to the deprivation of Brison's right to be protected from self-inflicted harm and his right to medical treatment for serious medical needs.

245.    As a direct and proximate result of JDCCO Defendants' acts, Brison was caused to suffer extreme emotional and physical pain resulting in his death.

246.    As a direct and proximate result of JDCCO Defendants' acts, Brison was

subjected to extreme pain, suffering, physical and emotional injury, fear, and shock prior to his death.

247.    The acts of JDCCO Defendants were intentional, wanton, malicious, oppressive, reckless, and/or callously indifferent to the rights of Brison, thus entitling Plaintiff to an award of punitive damages against JDCCO Defendants.

248.    In the event that Plaintiff prevails, she is also entitled to an award of attorney's fees and costs pursuant to 42 U.S.C. §1983.

WHEREFORE, Plaintiff prays the Court enter judgment in Count XIII in favor of Plaintiff and against JDCCO Defendants, awarding:

      a.  Compensatory damages in excess of Two Million Dollars ($2,000,000.00);

      b.  Punitive damages against JDCCO Defendants, in their individual capacities, in excess of Five Million Dollars ($5,000,000.00);

      c.  Reasonable attorney's fees and costs incurred in this action; and

      d.  Such other and further relief as the Court deems just and proper, together with costs.

Respectfully submitted,

Jerryl T. Christmas, #45370
JERRYL T. CHRISTMAS & ASS., L.L.C.
6101 Delmar Blvd. Suite A
St. Louis, MO 63112
314-361-2500
314-361-2525 Fax
christmaslaw@yahoo.com

and,

Todd R. Nissenholtz, #55049
COFMAN & TOWNSLEY, L.L.P.
200 S. Hanley Road, Suite 1070
St. Louis, Missouri 63105
314.621.2005
314.621.3118 (facsimile)
tn@cofmantownsley.com

*Attorneys for Plaintiff*