UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| CHRISTINA BROOKS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 4:17-CV-981 (CEJ) |
| THE CITY OF ST. LOUIS, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of the St. Louis defendants to dismiss for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff has filed a response in opposition.

On October 4, 2014, DeJuan Brison hanged himself in a cell at the Jennings Detention Center, just hours after he was transferred from the St. Louis City Justice Center. His mother, plaintiff Christina Brooks, filed suit in state court against (1) the City of Jennings, the Jennings Detention Center, Jennings Department of Corrections official Eugene Neal, and corrections officers Rick Crim, Demetrius Staples, Aykan Acikgoz, Kellye Still, Kyle Bashaw, Yvette Harris, and Kevin Stevener (the Jennings defendants); (2) the City of St. Louis, the St. Louis Justice Center, St. Louis Corrections Commissioner Dale Glass, and corrections officers Joshua Hill, Carl Myers, Lynn Page, and Jermanda Adams (the St. Louis defendants);[1] and (3) St. Louis County police officer Kent Menning. She asserts claims of wrongful death under § 537.080 Mo.Rev.Stat. and civil rights violations

---

[1] The record does not contain proof of service upon defendants Hill and Myers.

under 42 U.S.C. § 1983. The Jennings defendants removed the case to this Court, invoking federal question jurisdiction pursuant 28 U.S.C. § 1331. See 28 U.S.C. § 1441(a). The St. Louis defendants move to dismiss.

## I. Background

On October 1, 2014, DeJuan Brison was arrested and booked into the St. Louis City Justice Center. Complaint [Doc. # 3 at ¶25]. The following day, he was placed on full suicide watch, where he remained throughout his detention at the St. Louis Justice Center. Id. at ¶ 26. The City of Jennings had an outstanding warrant for Brison and, on the morning of October 4, 2014, St. Louis County police officer Kent Menning picked Brison up at the St. Louis City Justice Center to take him to the Jennings Detention Center. Id. at ¶¶ 27, 30. The St. Louis defendants failed to inform defendant Menning that Brison had been on suicide watch and he failed to ask for Brison's medical information. Id. at ¶¶28-29. The Jennings defendants failed to identify Brison's medical concerns or have him medically evaluated. Id. at 33. Brison was placed in a one-person cell that was difficult to monitor and in which another inmate had previously hanged himself. Id. at ¶¶ 36-39. At 12:57 p.m., Brison fastened a blanket around his neck and tied it to the bars of his cell door. He was not discovered until 1:21 p.m. Id. at ¶¶ 41-43. Brison was transported to Barnes-Jewish Hospital and placed on life support. He died on October 21, 2014, without regaining consciousness.

## II. Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes

a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (stating that a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Scheuer, 416 U.S. at 236. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see id. at 563 (stating that the "no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45–46 (1957), "has earned its retirement"); see also Ashcroft v. Iqbal, 556 U.S. 662, 678–84 (2009) (holding that the pleading standard set forth in Twombly applies to all civil actions). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

### III. Discussion

#### A. Claims against City of St. Louis and Justice Center

In Count II, plaintiff asserts a state-law negligence claim against the City of St. Louis. Defendants argue, and plaintiff concedes, that the City is entitled to sovereign immunity. See Folsom v. Morgan Cty., Mo., No. 2:10-CV-04128-NKL, 2011 WL 2417009, at *9 (W.D. Mo. June 13, 2011) (public entity afforded sovereign immunity from tort actions, unless injury arises from (1) operation of a motor vehicle by an agent of the entity; (2) a dangerous condition on the entity's property; or (3) the public entity has waived sovereign immunity by purchasing

3

liability insurance); Mo.Rev.Stat. § 537.600. Count II will be dismissed. Similarly, sovereign immunity also bars plaintiff's negligence claims against the individual defendants in their official capacity. See Montin v. Moore, 846 F.3d 289, 292 (8th Cir. 2017) (sovereign immunity bars any suits against states and their employees in their official capacities).

In Counts III and V, plaintiff brings state and federal claims against the St. Louis City Justice Center. She concedes that, as a municipal department, the Justice Center is not a suable entity. See Wallace v. St. Louis City Justice CTR, No. 4:12CV2291 JAR, 2013 WL 3773971, at *2 (E.D. Mo. July 17, 2013) (dismissing "frivolous" claim against St. Louis City Justice Center because the Justice Center is not a suable entity). Counts III and V will be dismissed.

### B. Claims Against Individual Defendants

#### 1. § 1983 Official Capacity Claims

In Count VI, plaintiff asserts a § 1983 deliberate indifference claims against the individual defendants in both their individual and official capacities. Defendants seek dismissal of the official capacity claims as redundant of the § 1983 municipal liability claim asserted against the City of St. Louis in Count IV.

Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (quoting Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n. 55 (1978)). If the government entity "received notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Id. Because a suit against government officers in their official capacity is functionally equivalent to a suit against the

4

employing governmental entity, it is proper to dismiss the official capacity claims as redundant of the claim against the City. Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010).

Plaintiff argues that her official capacity claims are not redundant because her claims against the City and the individual defendants are based on "separate failures of different policy, custom, and procedure."[2] [Doc. # 25 at 10]. However, the City will ultimately be liable if plaintiff succeeds on her official capacity claims. To the extent that plaintiff contends that Counts IV and VI assert different bases for liability, she should amend her claim against the City to encompass the additional claims.

## 2. Qualified Immunity

Qualified immunity shields government officials performing discretionary functions from civil liability unless their conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." Luckert v. Dodge Cty., 684 F.3d 808, 817 (8th Cir. 2012) (citation omitted). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Id. (citation omitted). "The doctrine of qualified immunity gives officials 'breathing room to make reasonable but mistaken judgments about open legal questions.'" Ziglar v. Abbasi, No. 15-1358, 2017 WL 2621317, at *23 (U.S. June 19, 2017) (quoting Ashcroft v. al–Kidd, 563 U.S. 731, 743 (2011)). Said another way, qualified immunity "provides ample protection to all

---

[2] In Count IV, plaintiff seeks to hold the City liable for failure "to hire, instruct, train, supervise, control, and/or discipline" the individual defendants and other personnel. Complaint at ¶ 96. In Count VI, plaintiff alleges that the individual defendants were deliberately indifferent to Brison's serious medical needs and "maintained policies, practices, and customs demonstrating deliberate indifference to the constitutional rights of citizens."

but the plainly incompetent or those who knowingly violate the law." Id. at *24 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Defendants Glass, Page, and Adams argue that they are entitled to qualified immunity on plaintiff's claims that they were deliberately indifferent because it was not clearly established that they had a duty to notify Menning or Jennings Detention Center that Brison had been on suicide watch. For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." Brossart v. Janke, No. 16-1412, 2017 WL 2602644, at *5 (8th Cir. June 16, 2017). "[C]learly established law" should not be defined "at a high level of generality." White v. Pauly, 137 S. Ct. 548, 552 (2017) (quoting al–Kidd, 563 U.S. at 742). The clearly established law must be "particularized" to the facts of the case. Id. (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." Id. (alterations in original).

Defendants assert that they were unable to locate any cases holding that law enforcement officials and jailers have a duty to inform another institution that a detainee poses a suicide risk. In Cavalieri v. Shepard, 321 F.3d 616 (7th Cir. 2003), cited by plaintiff, the defendant police officer was told in some detail by Cavalieri's mother that he had suicidal tendencies. After Cavalieri was transferred to a county jail, the defendant checked on him by telephone but never informed jail officials that he presented a risk of suicide. Cavalieri attempted to hang himself in the booking area and was in a permanent vegetative state. The defendant argued that there was not a clearly established obligation to communicate information regarding

6

a detainee's suicide risk upon transfer to another custodian. The Seventh Circuit disagreed. First, Cavalieri's "right to be free from deliberate indifference to suicide" was "clearly established." Id. at 623. It was also clearly established that the defendant had an obligation to pass along information regarding a detainee's medical condition. Id. (citing Egebergh v. Nicholson, 272 F.3d 925, 927–28 (7th Cir.2001) (denying a qualified immunity defense where police officers knew that the arrestee was an insulin-dependent diabetic, knew that such people need regular insulin injections, knew that the failure to give injections was potentially fatal, and nonetheless failed to make sure the injections were given, with fatal consequences)). By analogy, it was clearly established that the police officer had an obligation to inform the county jail that Cavalieri posed a risk of suicide. Similarly, in Viero v. Bufano, 901 F. Supp. 1387, 1394 (N.D. Ill. 1995), a probation officer was not entitled to dismissal of claims that she was deliberately indifferent to a juvenile's suicide risk where she did not communicate mental health information when he was transferred to a correctional facility. See also Conn v. City of Reno, 591 F.3d 1081, 1102 (9th Cir. 2010), cert. granted, judgment vacated sub nom. City of Reno, Nev. v. Conn, 563 U.S. 915 (2011), and opinion reinstated, 658 F.3d 897 (9th Cir. 2011) ("When a detainee attempts or threatens suicide en route to jail, it is obvious that the transporting officers must report the incident to those who will next be responsible for her custody and safety. Thus, the constitutional right at issue here has been clearly established."); Petrolino v. City & Cty. San Francisco, No. 16-CV-02946-RS, 2017 WL 67072, at *4 (N.D. Cal. Jan. 6, 2017) ("The authorities plaintiffs identify make clear a detainee's Fourteenth Amendment rights require jail personnel be alerted of that detainee's risk of suicide.").

Defendants fail to distinguish the case law cited by plaintiff or otherwise argue that it is inapplicable in this case. Accordingly, their motion to dismiss on the basis of qualified immunity will be denied.

### 3. Official Immunity

Defendants argue that plaintiff's state law claims against the individual defendants are barred by official immunity. This judicially-created doctrine protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts. Southers v. City of Farmington, 263 S.W.3d 603, 610 (Mo. 2008). However, the doctrine does not immunize public employees for torts committed when acting in a ministerial capacity. Id.

Plaintiff argues that the ministerial function exception applies in this case. "A ministerial function . . . is one of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." Stephens v. Dunn, 453 S.W.3d 241, 250 (Mo. Ct. App. 2014) (internal quotation and citation omitted). Ministerial duties can arise from "either a statutory or departmentally-mandated duty." State *ex. rel* Twiehaus v. Adolf, 706 S.W.2d 443, 445 (Mo. 1986). Departmentally mandated duties "can arise from departmental rules, the orders of a superior, or the nature of the position for which the defendant was employed." Hutson v. Walker, 688 F.3d 477, 485 (8th Cir. 2012) (quoting Nguyen v. Grain Valley R–5 Sch. Dist., 353 S.W.3d 725, 730 (Mo. Ct. App. 2011)).

Plaintiff alleges that defendants failed to communicate the information that Brison had been on suicide watch "in violation of standard practice, custom, and protocol," and "failed to follow proper procedures related to the transfer of detainees with serious medical needs." Complaint at ¶¶54, 61. Plaintiff has adequately pleaded that defendants failed to comply with mandated duties and thus were performing ministerial acts.[3] Defendants' motion to dismiss the state law claims against the individuals on the basis of official immunity will be denied.

### 4. **Proximate Cause**

Defendants argue that plaintiff cannot establish that their failure to inform Menning and Jennings that Brison was suicidal was the proximate cause of his injury.

To state a cause of action under § 1983, "a plaintiff must plead facts that would tend to establish that the defendant's wrongful conduct *caused* the constitutional deprivation." Zutz v. Nelson, 601 F.3d 842, 851 (8th Cir. 2010) (emphasis in original). Causation is generally a question of fact. Schaub v. VonWald, 638 F.3d 905, 921 (8th Cir. 2011). However, "where the causal link is so tenuous as to justify taking it from the trier of fact, a court may decide the issue as a matter of law." Id.; see also Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986) ("If it appears from the complaint, . . . that there is no causal connection between

---

[3] Plaintiff also argues that her claims fall within the bad-faith exception to official immunity. See Stephens v. Dunn, 453 S.W.3d 241, 250 (Mo. Ct. App. 2014) ("Official immunity does not apply to discretionary acts done in bad faith or with malice.") Plaintiff alleges that defendants' failure to act was "wanton, malicious, oppressive, reckless and/or callously indifferent" to Brison's rights. Complaint at ¶ 60. The Court is doubtful, but does not decide, that these bare allegations of malice, without more, are sufficient to satisfy the bad-faith exception. See id. at 251 (plaintiff failed to state claim where she did not allege "intent to cause harm to decedent" or "state facts from which it could be inferred [defendants] acted in bad faith or from improper or wrongful motive."

9

the alleged deprivations and the challenged conduct, the complaint may properly be dismissed for failure to state a claim."). Here, defendants contend that the connection between their alleged conduct and plaintiff's injury was severed by the failure of Mennings to ask for Brison's medical information and of the Jennings corrections officers to complete a proper medical evaluation at intake.

Once it is established a defendant's conduct "has in fact been one of the causes of the plaintiff's injury, there remains the question whether the defendant should be legally responsible for the injury." Conn, 591 F.3d at 1100 (citations omitted). The defendants' conduct is not the proximate cause of the alleged injuries "if another cause intervenes and supersedes [their] liability for the subsequent events." Id. at 1101 (citations omitted). However, "*foreseeable* intervening causes . . . will not supersede the defendant's responsibility." Id. (emphasis added). If "reasonable persons could differ" over the question of foreseeability, "summary judgment is inappropriate and the question should be left to the jury." Id.

Plaintiff has adequately pleaded facts that would support a determination that the failure of the Jennings defendants to protect Brison was a foreseeable consequence of the conduct of the St. Louis defendants. Defendants' motion to dismiss for failure to allege proximate cause will be denied.

\* \* \* \* \*

For the foregoing reasons,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss [Doc. # 21] is **granted in part and denied in part**.

An order of partial dismissal will be entered.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 28th day of June, 2017.