UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CECILIA PERRY, *et al.*, on Behalf of All Beneficiaries, Pursuant to §537.080, RSMo., <br><br> Plaintiffs, <br><br> v. <br><br> THE CITY OF ST. LOUIS, *et al.*, <br><br> Defendants. | Cause No: 4:17-CV-00981-RLW |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION
TO REOPEN AND REVERSE THE SUMMARY JUDGMENT IN
FAVOR OF DEFENDANT JERMANDA ADAMS AND FOR SANCTIONS
AGAINST DEFENDANTS THE CITY OF ST. LOUIS AND JERMANDA ADAMS**

Defendants City of St. Louis and Jermanda Adams ("Defendants") failed to disclose a key witness – the "mental health professional," Mr. Fred Barker – in discovery. Defendants then relied on an affidavit from Mr. Barker to obtain a favorable opinion from the Eighth Circuit Court of Appeals and a summary judgment from this Court. Because Defendants did not disclose Mr. Barker, Plaintiffs were never afforded the opportunity to depose him before the appeal was decided and summary judgment was granted. Plaintiffs have now deposed Mr. Barker and learned that the affidavit contained material misrepresentations that were instrumental in Defendants' success on appeal and in obtaining the summary judgment.

Rule 60 of the Federal Rules of Civil Procedure grants the Court the power to relieve a party from a final judgment or order when the judgment or order was obtained through misrepresentations. Rule 56 of the Federal Rules of Civil Procedure grants the Court the power to award attorneys' fees and expenses and enter other appropriate sanctions when an affidavit in support of summary judgment is submitted in bad faith. Rule 37 of the Federal Rules of Civil Procedure grants the Court the power to strike a party's pleadings when the failure to identify a

1

witness has substantially prejudiced the opposing party. Fed. R. Civ. P. 37(c)(1).[1]

As discussed in detail below, the extent of the misrepresentations and the harms caused by those misrepresentations warrants sanctions to the fullest extent that the above-stated rules permit.

## Relevant Background

The facts, supported by the evidence filed herewith, establish that Defendants did not disclose Mr. Barker during discovery, that Defendants then relied heavily on an affidavit from Mr. Barker to obtain favorable rulings from the Eight Circuit Court of Appeals and the Court, and that, based on Mr. Barker's own subsequent testimony, the affidavit contained multiple material misrepresentations that were key to Defendant obtaining the favorable rulings.

**Defendants did not disclose Mr. Barker during discovery.**

On June 30, 2017, Defendants served their initial disclosures. Defendants failed to disclose Mr. Barker as an "individual likely to have discoverable information," as required by Fed. R. Civ. P. (a)(1)(A)(i). (Exhibit 1, Defendants' Initial Disclosures). Defendants also failed to supplement their initial disclosures to identify Mr. Barker at any point before discovery closed.

On July 25, 2017, Plaintiff served interrogatories on Defendants. (Exhibit 2, Certificate of Service). This included an interrogatory requiring Defendants to identify testifying experts and multiple interrogatories seeking the name and addresses of key witnesses. (Exhibit 3, Defendants' Answers to Interrogatories, ¶¶ 9, 12-15). Defendants failed to identify Mr. Barker in their answers to the interrogatories. (Id.). Defendants also failed to supplement their answers to interrogatories to identify Mr. Barker at any point before discovery closed.

The Court's scheduling order, as subsequently modified, required Defendants to disclose

---

[1] Plaintiffs also intend to move for sanctions under Rule 11(b) of the Federal Rules of Civil Procedure. Plaintiffs, however, must move for Rule 11(b) sanctions in a separate motion and must first give Defendants a 21-day warning before filing the motion.

their testifying experts before September 1, 2018. (Doc. # 53, Doc. # 65, Doc. # 66). It also required Defendants to make the experts available for deposition on or before November 1, 2018. (Id.). Defendants did not identify Mr. Barker as a testifying expert prior to September 1, 2018 (or at any point prior to the close of discovery), nor did Defendants make Mr. Barker available for deposition prior to November 1, 2018 (or at any point prior to the close of discovery).

**Defendants relied heavily on Mr. Barker's affidavit to obtain favorable rulings.**

On November 15, 2018, Defendants filed a motion for summary judgment. (Doc. # 92). Defendants' motion attached and relied on an affidavit from Mr. Barker. (Doc. # 93-5).

The affidavit included multiple statements that were key to Defendants' arguments, including that: (1) Mr. Barker had downgraded Mr. Brison to "close observation" because Mr. Barker had "determined that Brison was not suicidal" (Doc. #93-5, ¶ 14); (2) "close observation" meant that a detainee had been "evaluated by a mental health professional and determined to not be suicidal" (Doc. #93-5, ¶ 15); (3) Mr. Barker would not downgrade an inmate to "close observation" unless he was "confident that the inmate was not at risk of self-harm" (Doc. #93-5, ¶ 16); and (4) based on his evaluation of Mr. Brison, Mr. Barker "was confident that he was not at risk of self-harm" (Doc. #93-5, ¶ 17).

Defendants relied on these statements to argue that, at the time of his transfer, a medical professional had determined that Mr. Brison was not at risk of suicide. They used the same arguments to argue that Defendant Adams could not substitute her judgment for that of a medical professional who had determined that Mr. Brison was "not at risk of suicide." They used them to argue that "close observation" was not a suicide watch level and, instead, indicated to prison personnel that the detainee was not a suicide risk. They used the statements to argue that there was not a robust consensus of cases holding that the failure to inform another jurisdiction of a detainee's

3

suicide status when a medical professional had deemed him "not suicidal" was a constitutional violation. (Doc. # 93, pgs. 5, 7-8, 12-13).

On December 24, 2018, Plaintiffs filed a motion to strike the affidavit of Mr. Barker based on Defendants' failure to identify him during discovery. (Doc. #103). Plaintiffs noted, as prejudice, that they had been precluded from evaluating the veracity of the statements in the affidavit:

> Allowing Mr. Barker's affidavit into evidence would not be harmless. By springing this affidavit on Plaintiffs at this late date, and as part of the summary judgment process, Defendants are engaging in litigation by ambush, having deprived Plaintiffs of their right to evaluate the proposed evidence and depose the witness prior to Defendant moving for summary judgment.

(Doc. #103, pg. 4).

On July 1, 2019, the Court denied Defendants' motion for summary judgment as to Defendant Adams. (Doc. # 148). The Court found that Defendants should have disclosed Mr. Barker as required by the Federal Rules of Civil Procedure:

> Given how much of the City of St. Louis and Adams' argument in support of their Motion for Summary Judgment is based on the fact that a medical professional downgraded Brison from full suicide watch to close observation, it is reasonable to expect those defendants knew that the medical professional was likely to have discoverable information. Accordingly, the Court finds that the city should have provided Barker's name in its initial disclosure or supplemented its initial disclosure once it learned Barker was the medical provider who evaluated on October 3, 2014.

(Doc. # 148, pg. 31).

The Court did not strike Mr. Barker's affidavit, but only because the Court found that, even with the affidavit, Defendants were not entitled to summary judgment:

> Because the Court finds that Barker's evaluation of [Decedent] and subsequent lowering of his status does not preclude liability against City of St. Louis, the Court declines to utilize the extreme remedy excluding his affidavit or testimony at trial. Notwithstanding the impact Barker's evaluation has on the merits of the claims at issue in the motions for summary judgment, the City of St. Louis should

4

have disclosed Barker's name prior to submitting its Motion for Summary Judgment with Barker's affidavit as an attachment.

(Id.).

On July 11, 2019, Defendants filed an interlocutory appeal of the Court's summary judgment order. (Doc. # 150). On appeal, Defendants, again, relied heavily on Mr. Barker's affidavit, arguing that (1) Defendant Adams knew that "a mental health professional [Mr. Barker] had determined that Brison was not suicidal," (Appellant's Brief, pg. 13) (2) Defendant Adams had "relied on the medical opinion of a trained professional and reliance on that opinion cannot, as a matter of law, constitute deliberate indifference," (Appellant's Brief, pg. 15), and (3) that "it was not clearly established on October 4, 2014 that transferring an inmate to another jurisdiction ***who had been evaluated by a mental health professional, determined not suicidal***, and placed on a status that the transferring officer knew ***meant the inmate was not suicidal*** without telling the receiving jurisdiction that the inmate was on such a status constitutes a constitutional violation." (Appellant's Brief, pg. 27 [emphasis added]).

Over Plaintiffs' protests, the Eighth Circuit Court of Appeals relied heavily on Mr. Barker's affidavit to overrule the Court's summary judgment decision:

> Framed at the level of specificity that the Supreme Court mandates for our analysis, we understand the specific question we must answer to be as follows: "Does a transferring officer violate a pretrial detainee's Fourteenth Amendment rights by failing to inform a receiving entity that the detainee is on close-observation status ***if a mental health professional has determined that the detainee is not suicidal and if the applicable close-observation status is, in and of itself, indicative of the absence of a suicide risk***? Framed in this way, and even assuming that Adams had knowledge that Brison was on Close Observation, we find no clearly established right. Brison was ***analyzed by a mental health professional and was on a watch status indicating he was not suicidal***. Therefore, this is not a case like *Boswell v. Sherburne County*, 849 F.2d 1117, 1122 (8th Cir. 1988), where a jailer with knowledge of a detainee's serious medical condition failed to contact medical professionals or advise incoming jailers as to the detainee's risk.

5

*Perry v. Adams*, 993 F.3d 584, 587-88 (8th Cir. 2021) (emphasis added).

Based on the above, the Court was forced to reverse its earlier ruling and enter summary judgment in favor of Defendant Adams on Plaintiffs' § 1983 claim against her.

**Mr. Barker's affidavit contained material misrepresentations.**

After the appeal and the entry of summary judgment, Defendants finally made Mr. Barker available for a deposition. Because the case had been stayed throughout the appeal, Plaintiffs had been prohibited from seeking to depose him at any point during the prior 3 years. The deposition was taken on April 11, 2022. (Exhibit 4, Excerpts from the Deposition of Fred P. Barker). The deposition revealed that multiple material statements made in Mr. Barker's affidavit were false.

Directly contrary to the statements in his affidavit, Mr. Barker repeatedly testified that, at the time of his evaluation, he had deemed Mr. Brison to be not just at risk of suicide, ***but at a moderate to high risk of suicide***:

> Q And so when you would have indicated that Dajuan Bryson was on close observation, that meant ***he was still a risk of suicide***.
> A Uh-huh.
> Q Yes?
> A ***Yes***.

(Ex. 4, 45:20-25 [emphasis added]).

> Q That's a good distinction. You're still saying he's suicidal.
> A ***Yes. At risk of suicide***.

(Ex. 4, 89:24-90:1 [emphasis added])

> Q And Mr. Nissenholtz showed you the part of this policy that you were trained on that indicates that full suicide watch and close observation are both crisis watch statuses –
> A Uh-huh.
> Q --is that right?
> …
> A THE WITNESS: The full suicidal – basically, you know – I don't totally understand the question. ***I do know that stepping down from full to close does not remove them***

6

> *from suicide watch.* They can be not – they can be saying I'm not suicidal, but we can't trust that at that point. *So we keep him still on suicidal watch status, which is close observation.* That indicates he is at risk. Yes, he's at risk. And high, low, moderate, you know, is kind of where we – we go with that. And he was being incarcerated and other – other factors. *I would consider him at least moderate, if not full, not a moderate, if no – I forget the work I was using there – high risk. Yeah, high risk.*

(Ex. 4, 123:18-124:13 [emphasis added]).

Directly contrary to the statements in his affidavit, Mr. Barker testified that "close observation" was still "suicide watch" and that an inmate on "close observation" was still considered to be at risk of suicide:

> Q   And what is the definition of close observation?
> A   Close observation is when you're on full suicide watch, you have suicide garb on. We got this suicide blanket and no clothes besides that. When you go on close observation, your observation time changes from every ten minutes to every 15 minutes. *Close observation is still suicide watch, it's just not the full you have to wear the suicide blanket*.
> Q   So both close observation and full suicide watch are suicide watch.
> A   Yes
> Q   And that was your understanding and the way you conducted your work at St. Louis City.
> A   Yes
> Q   And when someone's on either full suicide watch or close observation, that was considered by everyone in St. Louis City to be –
> A   Suicide –
> Q   -- suicide watch.

(Ex. 4, 43:25-44:19 [emphasis added]).

> Q   So according to the practices and policies that you followed in –
> A   Uh-huh.
> Q   -- St. Louis City, *someone on close observation was still at risk of suicide*.
> A   *Yes*.

(Ex. 4, 45:7-12 [emphasis added]).

7

Directly contrary to the statements in his affidavit, Mr. Barker testified that he would never have placed Mr. Brison on "close observation" if it were not a suicide watch level:

> Q So when you moved him to close observation, you're saying he's still at risk of suicide, it's just when I saw him, he wasn't, you know –
> A Presenting.
> Q – Presenting or actively engaged in a manner that I said he is going to hang himself now.
> A Correct.
> Q But in stepping him down to close observation, which is still suicide watch, you're saying, based on the policies, practices and procedures, he is still a real risk of suicide.
> A Uh-huh.
> …
> Q Yes?
> A I would say at risk. I – I wouldn't –I wouldn't use the terminology real risk. I think it's an accurate one, but he's at risk. And risks are considered in levels. So he's not actively expressing, he's not threatening when I saw him, which was on the 3rd. So that had – he had already displayed enough to step down to close observation because, you know, ***I wouldn't do that if he wasn't – if that wasn't a suicide watch level***.
> Q So if I understand what you're saying, he wasn't at some manic level, but he is still, in your mind as a licensed counselor, a risk of suicide.
> …
> A THE WITNESS: ***I would say yes, he was at risk***.

(Ex. 4, 90:10-91:14 [emphasis added]).

Notably, Mr. Barker also testified that, contrary to every argument that Defendants have ever raised at every level, Mr. Brison was ***not*** on "close observation" at the time of his transfer but, instead, ***was on full suicide watch***:

> Q And so if we can all agree now that in fact you did see him on 10/3/2014, the record that we just looked at would then indicate that early the next morning, at 1:00 o'clock in the morning on 10/4/14, ***he was re-upgraded to full suicide watch by Nurse Kramer, correct?***
> …
> A THE WITNESS: ***That's correct.***

8

(Ex. 4, 111:4-11 [emphasis added]).

> Q -- the whole thing's a mess, but if he was in fact transferred after October 4th, 2014 at 1:00 a.m. and had not been seen by a licensed counselor, ***he would have been transferred on full suicide watch.***
> A ***Yeah, that would be correct.***

(Ex. 4, 112:10-15 [emphasis added]).

Ultimately, Defendants' arguments to this Court and the Eighth Circuit Court of Appeals were based on material misstatements made in an affidavit by a witness that Defendants failed to disclose and that Plaintiffs, therefore, did not have an opportunity to depose.

**ARGUMENT**

Defendants' actions, detailed above, warrant relief under multiple Federal Rules of Civil Procedure. Pursuant to Fed. R. Civ. P. 60, the summary judgment entered in favor of Defendant Adams on Plaintiffs' § 1983 claim should be reopened and reversed because it was obtained based on misrepresentations and misconduct. Pursuant to Fed. R. Civ. P. 56, Plaintiffs should be awarded attorneys' fees for the hundreds of hours spent battling the Defendants' misstatements and misrepresentations in this Court and the Eighth Circuit Court of Appeals. Defendants' pleadings should also be struck, pursuant to Fed. R. Civ. P. 37, due to the severe prejudice that Plaintiffs have suffered due to Defendants' failure to timely disclose Mr. Barker.

**I.    Summary judgment in favor of Jermanda Adams should be reopened and reversed.**

Rule 60 of the Federal Rules of Civil Procedure grants the Court the authority to relieve a party from a final judgment or order when the judgment or order was obtained through misrepresentations or misconduct by an opposing party. Fed. R. Civ. P. 60(b)(3).

Rule 60(b) is grounded in equity and promotes the principle "that justice should be done." *Harley v. Zoesch*, 413 F.3d 866, 870 (8th Cir. 2005). The Court "has wide discretion in ruling on a Rule 60(b) motion." *Jones v. Swanson*, 512 F.3d 1045, 1049 (8th Cir. 2008). In considering a

Rule 60(b) motion, a Court is entitled to assume that the movant's factual allegations are true, as on a motion to dismiss." *U.S. v. Denham*, 817 F.2s 1307, 1309 (8th Cir. 1987).

To succeed on the motion, the movant must (1) show through clear and convincing evidence that the opposing party obtained the final judgment or order through fraud, misrepresentation, or other misconduct, and (2) establish that the conduct complained of prevented the losing party from fully and fairly presenting his case or defense. *Wharf v. Burlington Northern R. Co.*, 60 F.3d 631, 637-38 (9th Cir. 1995).

In *Wharf*, the defendant represented to the plaintiff and to the jury that the plaintiff had not been terminated due to the injury at issue. *Id*. The defendant used this to argue for significantly reduced lost wages and to avoid a wrongful termination claim. *Id*. After trial, the defendant terminated the plaintiff. *Id*. The plaintiff learned that the defendant had already decided to fire the plaintiff prior to trial. *Id*. Based on this evidence, the Ninth Circuit Court of Appeals granted the plaintiff's motion to reopen the final judgment, pursuant to Rule 60(b)(3). *Id*. The Court found that the defendant had knowingly or recklessly misrepresented a key fact to the jury and that this misrepresentation had precluded the plaintiff from seeking the full extent of his damages. *Id*.

As in *Wharf*, Defendants, here, have made multiple misrepresentations, either knowingly or recklessly. The affidavit repeatedly stated that Mr. Barker had found that Mr. Brison was not at risk of suicide when the truth was that Mr. Barker had found that Mr. Brison was at a moderate to high risk of suicide. The affidavit stated that Mr. Barker had placed Mr. Brison on "close observation" because Mr. Brison was not at risk of self-harm, when the truth was that Mr. Barker had placed Mr. Brison on "close observation" because Mr. Brison was a suicide risk, and "close observation" was a suicide watch level. Defendants' arguments based on the affidavit were that Mr. Brison was on "close observation" at the time of his transfer when, according to Mr. Barker,

Mr. Brison was on "full suicide watch" at the time of his transfer.

The summary judgment in favor of Defendant Adams was obtained based almost exclusively on these misrepresentations. Per its own opinion, the Eighth Circuit Court of Appeals ruled in favor Defendant Adams because a medical professional had determined Mr. Brison was not suicidal and because that medical professional had placed Mr. Brison on "close observation," which was purportedly deemed a non-suicide watch level. For these reasons, the Eight Circuit concluded that this case was not like *Boswell v. Sherburne County*, 849 F.2d 1117, 1122 (8th Cir. 1988). This implicitly indicates that, had the Eighth Circuit known that these statements were false, then it would have determined that this case ***was*** like *Boswell* and that there was a well-established constitutional violation. The Court's denial of summary judgment would have been affirmed.

The misrepresentations prohibited Plaintiffs from fully and fairly presenting their case. Because of the Eighth Circuit's ruling, Plaintiffs are currently barred from presenting § 1983 claim against Defendant Adams to the jury. Based on Defendants' post-appeal motions, it appears that Defendants also intend to use the Eighth Circuit's ruling to try to obtain summary judgment in favor of Defendant City of St. Louis. Plaintiffs would ultimately be deprived of two claims based on an appellate ruling that Defendants obtained only through their misrepresentations.

"[J]ustice should be done." *Harley*, 413 F.3d at 870. The principles of equity inherent in Rule 60(b) do not favor allowing Defendants to obtain summary judgment through the concealment of a key witness and use of an affidavit containing material misrepresentations. Reopening the Court's summary judgment ruling pursuant to Rule 60(b)(3) is warranted.

II. **Sanctions are warranted pursuant to Rule 57 for filing an affidavit in bad faith.**

Rule 56 of the Federal Rules of Civil Procedure grants the Court the authority to order monetary or other appropriate sanctions, or even hold a party in contempt, when a party is found

to have submitted an affidavit in support of summary judgment in bad faith. Fed. R. Civ. P. 56(h). "A court has wide discretion in deciding what constitutes 'bad faith.'" 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2742 (3d ed. 1998).

In *Rogers v. AC Humko Corp.*, 56 F.Supp.2d 972, 979-81 (W.D. Tenn. 1999), the district court imposed Rule 56 sanctions against a defendant who had procured an affidavit from the plaintiff's supervisor falsely claiming that the supervisor had not known that plaintiff had applied for short-term disability before firing the plaintiff. The court noted that "[a]t best, the affidavit contained a highly reckless representation of an important fact by Defendant's agent which representation Defendant never sought to expunge from the record despite subsequent notice as to its falsity. At worst, it was a deliberate and calculated misrepresentation abetted by counsel and designed to thwart justice and prevent a fair resolution of this case." *Id.* at 981.

In *Warshay v. Guinness PLC*, 750 F.Supp. 628, 639-41 (S.D.NY. 1990), the court imposed Rule 56(g) sanctions in the amount of $10,000.00 against a plaintiff, concluding that if the plaintiff had not falsely alleged that he was not based in New York, it might not have been necessary to deny the defendant's motion for summary judgment. In *Barticheck v. Fidelity Union Bank/First Nat'l State*, 680 F.Supp. 144, 150 (D.N.J. 1988), after finding that one of the plaintiffs had filed an affidavit contradicting her prior deposition testimony in hopes of creating an issue of material fact, the district court ordered the plaintiff to compensate defendants for expenses incurred in responding to her affidavit in their reply brief.

Finally, in *Acrotube, Inc. v. J.K. Fin. Group, Inc.*, 653 F.Supp. 470, 477-78 (N.D.Ga. 1987), one of the defendants had falsely alleged in an affidavit that, in an earlier state court proceeding, he had never admitted to the default on the loan that formed the basis of the current action. Finding that "the testimony he offered was flatly at odds with facts indisputably within his knowledge,"

the district court granted the plaintiff's motion for sanctions under Rule 56.

Defendants' actions in filing Mr. Barker's affidavit in this case go far beyond any of the examples in the above-identified cases. As already detailed above, Defendants concealed a witness and then relied on an affidavit containing false statements from that witness ***for more than 3 years*** to obtain favorable rulings from the Eighth Circuit and the Court. Defendants did this knowing that the failure to disclose the witness would prohibit Plaintiffs from deposing him and challenging the false statements in the affidavit. This is not a "reckless representation," but a "deliberate and calculated" course of conduct "designed to thwart justice." *Rogers*, 56 F.Supp.2d at 981. That course of conduct resulted not just in incorrect rulings, but also hundreds of hours spent on unnecessary pre-appeal motions, appellate briefing, and post-appeal motions to address the false claims made in the affidavit, as well as the ongoing motion practice to correct the harms that those false claims have caused.

Monetary sanctions alone will not cure the harms caused by Defendants' affidavit – reopening the improperly obtained summary judgment is a necessary part of any relief granted. Plaintiffs, however, should also be compensated pursuant to Rule 57 for the hundreds of hours of otherwise unnecessary work and the years of delay that the false affidavit have caused.

### III. Defendants' pleadings should be struck pursuant to Rule 37.

Rule 37 of the Federal Rules of Civil Procedure authorizes the Court to strike a party's pleadings or enter a default judgment as a sanction for failing to identify a witness as required by Rule 26(a) or (e). Fed. R. Civ. P. 37(c)(1)(C) (stating that the Court "may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)); Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi) (authorizing orders striking pleadings in whole or in part, and rendering a default judgment against the disobedient party).

The Court has significant discretion in determining the appropriate sanction for a violation of Rule 37. In determining what sanctions are appropriate, courts "must consider all of the evidence and circumstances that tend to provide a 'complete understanding of the parties' motivations." *Int'l Bhd. Of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp.*, 380 F.3d 1084, 1106 (8th Cir. 2004). While the striking of pleadings or the entry of a default judgment is recognized as a harsh means of relief, it is appropriate when discovery abuses are committed in bad faith or are deliberate, intentional, or willful. *Boogaerts v. Bank of Bradley*, 961 F.2d 765, 768 (8th Cir. 1992).

The Court has already determined that Defendants should have disclosed Mr. Barker. The Court decided not to sanction Defendants for this failure only because it intended to deny the Defendants' motion for summary judgment, eliminating any prejudice it might cause Plaintiffs. That justification no longer holds true. Had Plaintiffs been afforded the opportunity to depose Mr. Barker and learn of the falsity of these misrepresentations before the rulings were obtained, then Plaintiffs would have avoided the more than ***3 years of prejudices*** detailed at length above. Plaintiffs continue to suffer prejudice in the form of the claim they have already lost and the additional claims on which Defendants will certainly seek summary judgment going forward based on this false affidavit and the rulings it generated.

Defendants' failure to disclose Mr. Barker was not inadvertent. It was part of a deliberate, intentional, and willful plan. Defendants did everything in their power to keep Mr. Barker from being deposed and then to obtain summary judgment before he could be deposed. It is reasonable to conclude that this was because Defendants knew that statements in the affidavit were false, and that the deposition of Mr. Barker would prove them false.

There is no sanction short of striking Defendants' pleadings that can adequately remedy the harms that Defendants' actions have caused. For this reason, Defendants' actions warrant an

order striking Defendants' pleadings.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully pray for an order from the Court (1) reopening and denying Defendant Adams's motion for summary judgment on Plaintiffs' claim pursuant to § 1983, (2) ordering Defendants to pay Plaintiffs all attorneys' fees, costs, and expenses incurred in connection with proceedings and pleadings necessitated by the false statements made in Mr. Barker's affidavit, including attorneys' fees, costs, and expenses associated with responding to Defendants' motion for summary judgment, addressing Defendants' interlocutory appeal, and addressing Defendants' post-appeal motions, with the precise amount to be determined by affidavits subsequently submitted by Plaintiffs' counsel or via an evidentiary hearing, and (3) striking Defendants' pleadings, and for such other and further relief as the Court deems just and proper based on the circumstances presented.

Respectfully submitted,

*/s/ Todd R. Nissenholtz*
Todd R. Nissenholtz, #55049MO
COFMAN TOWNSLEY, L.L.P.
200 South Hanley Road, Suite 1070
St. Louis, MO 63105
Phone: 314.621.2005
Fax:    314.621.3118
tn@cofmantownsley.com

and

Jerryl T. Christmas, #45370MO
JERRYL T. CHRISTMAS & ASS., L.L.C.
6101 Delmar Blvd., Suite A
St. Louis, MO 63112
Phone: 314.361.2500
Fax:    314.361.2525
christmaslaw@yahoo.com
*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

   I hereby certify that, on June 16, 2022, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system on counsel of record for all parties to this action.

                   */s/ Todd R. Nissenholtz*