UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CECELIA PERRY, et al., on behalf of all Beneficiaries, pursuant to Section 537.080,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF ST. LOUIS, et al.,<br><br>Defendants. | )<br>)<br>)<br>) No. 4:17-CV-981 RLW<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Exclude any Evidence or Argument that Dejuan Brison was "Re-Upgraded" to Full Suicide Watch, to Exclude LPN "C Cramer" and Any Record Authored By Them or, In the Alternative, for Leave to Depose LPN "C Cramer" Prior to Filing Defendants' Reply in Support of Summary Judgment (ECF No. 254) and Defendants' Motion for Extension of Time to File Their Reply in Support of Summary Judgment (ECF No. 256).

    I.    **Defendants' Motion to Exclude any Evidence or Argument that Dejuan Brison was "Re-Upgraded" to Full Suicide Watch, to Exclude LPN "C Cramer" and Any Record Authored By Them or, In the Alternative, for Leave to Depose LPN "C Cramer" Prior to Filing Defendants' Reply in Support of Summary Judgment (ECF No. 254)**

In response to Defendants' previous motion for summary judgment, Plaintiffs admitted that Mr. Brison was on a downgraded status at the time of his transfer: "[A]t the time Mr. Brison was transferred he was on 'modified suicide watch/close observation.'" (Plaintiff's Response to the St. Louis City Defendants' Statement of Undisputed Material Facts, ECF No. 106 at 6, ¶ 18); "Mr. Brison continued to be on 'modified suicide watch/close observation' status throughout the remainder of his confinement at the St. Louis City Justice Center, including up to and through the

1

time of his transfer. (Plaintiff's Statement of Additional Undisputed Material Facts in Opposition to the St. Louis City Defendants' Motion for Summary Judgment, ECF No. 105 at 4, ¶ 21); "Mr. Brison was thereafter placed on 'modified suicide watch/close observation' status and continued to be on 'modified suicide watch/close observation' status throughout the remainder of his confinement at the St. Louis City Justice Center, including up to and through the time of his transfer." (Memorandum in Opposition to Defendants City of St. Louis's and Jermanda Adams's Motion for Summary Judgment, ECF No. 104, at 3). Likewise, Plaintiffs' briefs before the Eighth Circuit Court of Appeals maintained that Mr. Brison remained on modified suicide watch/close observation status after his interview with Fred Barker at the St. Louis Justice Center, up and through his transfer. (Brief of Appellee, ECF No. 237-4, at 12, 13, 15, 31, 35, 43). Thus, the Eighth Circuit framed its opinion accordingly:

> Framed at the level of specificity that the Supreme Court mandates for our analysis, we understand the specific question we must answer to be as follows: "Does a transferring officer violate a pretrial detainee's Fourteenth Amendment rights by failing to inform a receiving entity that the detainee is on a close-observation status if a mental health professional has determined that the detainee is not suicidal and if the applicable close-observation status is, in and of itself, indicative of the absence of a suicide risk?" Framed in this way, and even assuming that Adams had knowledge that Brison was on Close Observation, we find no clearly established right.

*Perry v. Adams*, 993 F.3d 584, 587–88 (8th Cir. 2021).

As part of her opposition to Defendants Jermanda Adams and the City of St. Louis's more recent Motion for Summary Judgment, Plaintiff asserts that "[o]n October 4, 2013, at 1:00 a.m.– after Mr. Barker's examination of Mr. Brison and prior to Mr. Brison's transfer—a member of Defendant's medical staff, Nurse Kramer, examined Mr. Brison, prescribed him anti-anxiety medication and upgraded Mr. Brison back to 'full suicide watch' status." (Plaintiffs' Statement of Additional Undisputed Material Facts ECF No. 252, at 3, ¶17); *see also* Plaintiffs' Statement of Additional Undisputed Material Facts, ECF No. 252, at 3, ¶18 ("[a]t all times after 1:00 a.m., on

2

October 4, 2013, up to and through the time of his release Mr. Brison remained on "full suicide watch" status."). The support for this position comes from a "Crisis Watch Nursing Round Daily Progress Note, Bates labeled "CITYSTL 00864," signed by Nurse C. Cramer. (ECF No. 251-2).

### A. Discovery Violation

Defendants bring this motion under Federal Rule 37(c)(1):

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi).

Fed. R. Civ. P. 37(c)(1); *see* ECF No. 255 at 1. Defendants argue that this Court should "exclude LPN 'C Cramer' and any record authored by them [sic] or, in the alternative for leave to depose LPN 'C Cramer' prior to filing defendants' reply in support of summary judgment." (ECF No. 255 at 1). Defendants contend that Plaintiffs failed to disclose Nurse Cramer, as required under the Federal Rules, specifically Rule 26, nor did Plaintiffs identify Nurse Cramer in response to interrogatories requiring such disclosure or identify Nurse Cramer as a non-retained expert. (ECF No. 264 at 3-4); *see* Fed. R. Civ. P. 26(a)(1)(A)(i) ("Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."). Defendants claim that if "Plaintiffs had disclosed Nurse Cramer as required

3

and disclosed that he was likely to have discoverable information regarding Brison's alleged 're-upgrade' back to full suicide watch before he was transferred, Defendants would have sought to depose Nurse Cramer."   (ECF No. 264 at 3).

Plaintiffs respond that they did not commit a discovery violation.   Plaintiffs note that the support for their proposition that that Mr. Brison was on "full suicide watch" at the time of his transfer is derived from materials provided by Defendants: (1) deposition testimony from Mr. Fred Barker, (2) a Crisis Watch Nursing Round Daily Progress Note, and (3) a Medication Administration Record.   (ECF No. 263 at 3 (citing ECF No. 251, at 18-19, ¶ 18)). Plaintiffs further state that they do not cite to an affidavit, sworn statement, or other testimony from Nurse Cramer to support the assertion that Mr. Brison was on "full suicide watch" at the time of his transfer. (ECF No. 263 at 5). Plaintiffs maintain that additional discovery related to this issue, including deposing Nurse Cramer, is not necessary: "[a] deposition might reveal Nurse Cramer's motivations and intentions in checking the box, but those motivations and intentions would only speak to ***why*** Mr. Brison was on 'full suicide watch' and not ***whether*** he was on full suicide watch, which is the factual dispute at issue." (ECF No. 263 at 7 (emphasis in original)).

The Court denies Defendants' Motion to Exclude.  As noted, Plaintiffs rely upon Defendants' records in support of their assertion that Mr. Brison was on full suicide watch.   Thus, Defendants cannot feign surprise because Plaintiffs did not specifically identify Nurse Cramer's Crisis Watch Nursing Round Daily Progress Note in their discovery responses. Further, the Court finds no basis for allowing the deposition of Nurse Cramer or further prolonging this already protracted litigation.   Plaintiffs have not provided an affidavit from Nurse Cramer or identified Nurse Cramer as an expert.   Rather, Plaintiffs have identified Nurse Cramer's Crisis Watch Nursing Round Daily Progress Note for purposes of demonstrating the effect that it should have had on other parties.  Defendants have not demonstrated that additional discovery, such as a

4

deposition of Nurse Cramer, would impact this case given that the validity of the Crisis Watch Nursing Round Daily Progress Note is not at issue. Indeed, even Defendants admit that the Crisis Watch Nursing Round Daily Progress Note is irrelevant to this case because "there is no evidence that any correctional officer ever saw it or was aware of any purported 're-upgrade' to 'full suicide watch.'" (ECF No. 255 at 6, n.2). That is, medical records are not provided to correctional officers and the "admissible evidence of what other correctional officers (not Adams) knew and recorded on October 4, 2014 demonstrate that Brison was on 'close observation.'" (*Id*. (citing logs)). Therefore, the Court finds no basis for granting Defendants' Motion to Exclude because they have not been prejudiced and additional discovery would not advance the litigation. Defendants' Motion to Exclude is denied on this basis.

### B. Judicial Estoppel and Law of the Case Doctrine

Defendants also claim that the Court should grant their Motion to Exclude because Plaintiffs' position is barred by judicial estoppel and the law of the case doctrine.

"The circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). "Three factors, while not 'an exhaustive formula for determining the applicability of judicial estoppel,' aid a court in determining whether to apply the doctrine." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1047 (8th Cir. 2006) (quoting *New Hampshire v. Maine*, 532 U.S. at 751). Specifically, those the three factors are:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an

5

  inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire v. Maine*, 532 U.S. at 750–51 (internal quotations and citations omitted).

  Similarly, the law of the case doctrine "'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages *in the same case.*'" *Jarrard v. CDI Telecommunications, Inc.*, 408 F.3d 905, 911–12 (7th Cir. 2005) (citing *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 815–16 (1988) (citation omitted) (emphasis added)); *see also id.* at 816 ("[T]he doctrine applies as much to the decisions of a coordinate court in the same case as to a court's own decisions."). The doctrine "is a rule of practice, based on sound policy that, when an issue is once litigated and decided, that should be the end of the matter." *Evans v. City of Chi.,* 873 F.2d 1007, 1014 (7th Cir.1989) (quoting *Barrett v. Baylor,* 457 F.2d 119, 123 (7th Cir.1972)). Under the doctrine, "matters decided on appeal become the law of the case to be followed in all subsequent proceedings in the trial court and, on second appeal, in the appellate court, unless there is plain error of law in the original decision." *Evans,* 873 F.2d at 1013–14 (internal quotes and citation omitted). The doctrine does not apply if the prior decision is clearly erroneous—if, for example, "controlling authority has since made a contrary decision of law[.]" *See id.* at 1014 (collecting authority).

  Defendants argue that this Court cannot "reverse course based upon Plaintiffs' inconsistent position" when it previously relied upon Plaintiffs' admission that Mr. Brison was on a downgraded status at the time of transfer. (ECF No. 255 at 5-6). Defendants note that the purported evidence supporting Plaintiffs' new position was "previously available on the same record," "would frustrate judicial efficiency and create the appearance that the Court was misled." (ECF No. 255 at 6).

  In response, Plaintiffs believe that Defendants' arguments related to judicial estoppel and the law of the case should not be raised in a motion for sanctions. (ECF No. 263 at 7-8). Rather,

6

Plaintiffs contend that Defendants should address these arguments in their reply in support of their Motion for Summary Judgment.   (ECF No. 263 at 8).

Plaintiffs further assert that judicial estoppel is not applicable because their positions in this case can be reconciled. (ECF No. 263 at 8). Likewise, Plaintiffs state that the law of the case doctrine does not apply because it "applies only to appellate decisions and final decisions by the district court that have not been appealed."   (ECF No. 263 at 9 (citing *First Union Nat. Bank v. Pictet Overseas Tr. Corp.*, 477 F.3d 616, 620 (8th Cir. 2007)).   Plaintiffs note that district court interlocutory orders are not impacted by the law of the case. (*Id.*)   Plaintiffs emphasize that they are permitted to raise any issues "previously rejected by the Court and not addressed by the Eighth Circuit's opinion." (ECF No. 263 at 10).   Finally, Plaintiffs argue that, as they also asserted in their response to Defendants' Motion for Summary Judgment, exceptions exist to the law of the case doctrine.   Notably, "[i]t is well settled that the decision of an appellate court is ordinarily the law of that case on the points presented, binding in all subsequent proceedings on the lower court. If, however, the evidence is substantially different in material respects from that presented on the former appeal, the rule of the law of the case is not applicable." *City of Sedalia ex rel. & to Use of Ferguson v. Shell Petroleum Corp.*, 81 F.2d 193, 196 (8th Cir. 1936); *Pyramid Life Ins. Co. v. Curry*, 291 F.2d 411, 414 (8th Cir. 1961) ("[t]he law of the case rule does not apply if the evidence on the later trial is substantially different from that on the former trial"); *In re Progressive Farmers Ass'n*, 829 F.2d 651, 655 (8th Cir. 1987) ("'The law of the case' doctrine generally requires that a decision on a former appeal be followed in any subsequent proceedings in that court or a lower court unless evidence subsequently introduced is substantially different or the decision is clearly erroneous and works manifest injustice.").   Plaintiffs claim the evidence at issue now "is substantially different in material respects from that presented to the Eighth Circuit, to the point

that, if the present evidence had been presented on appeal, the outcome would have been different." (ECF No. 263 at 10).

The Court agrees that this matter is not properly before the Court on a Motion to Exclude brought under Rule 37. As discussed, the Court does not find that information was intentionally withheld because Plaintiffs' position is based upon documents produced by Defendants. In addition, the Court finds that the judicial estoppel and law of the case arguments are better addressed in the context of Defendants' Motion for Summary Judgment. *See also Stallings*, 447 F.3d at 1046 (the Eighth Circuit reviews the district court's application of the judicial estoppel doctrine under an abuse of discretion standard and that the abuse of discretion standard "typically applies to threshold evidentiary determinations made in connection with summary judgment motions"). Thus, the Court will address Defendants' judicial estoppel and law of the case arguments as part of a more comprehensive review regarding the propriety of allowing such evidence at this stage of the litigation.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Exclude any Evidence or Argument that Dejuan Brison was "Re-Upgraded" to Full Suicide Watch, to Exclude LPN "C Cramer" and Any Record Authored By Them or, In the Alternative, for Leave to Depose LPN "C Cramer" Prior to Filing Defendants' Reply in Support of Summary Judgment (ECF No. 254) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Extension of Time to File Their Reply in Support of Summary Judgment (ECF No. 256) is **GRANTED**, in part. Defendants shall file their Reply in Support of Summary Judgment no later than **Friday, September 9, 2022**.

Dated this 31st day of August, 2022.

*Ronnie L. White*
_____
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE